No. 12832

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

GENE ANDREW AUSTAD,

Defendant and Appellant.

---

Appeal from: District Court of the Ninth Judicial District,
Honorable R. D. McPhillips, Judge presiding.

Counsel of Record:

For Appellant:

E. F. Gianotti argued, Great Falls, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas A. Budewitz, Assistant Attorney General,
argued, Helena, Montana
Charles M. Joslyn, County Attorney, argued, Choteau,
Montana

---

Submitted: March 3, 1975

Decided: APR - 9 1975

Filed: APR - 9 1975

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal by defendant Gene Austad from a judgment of conviction of the crime of burglary in the first degree entered in the district court, Teton County.

The state's evidence presented disclosed that on the evening of December 21, 1973, Glen Shetler, a part-time police officer, was patrolling the streets of Fairfield, Montana. At approximately 6:40 p.m. Shetler arrived in the southwest part of Fairfield where the GTA grain elevator was located. At the time a new addition was being built onto the grain elevator and a storage van, owned by Hogenson Construction Company, was parked adjacent to the grain elevator. This van was used to store tools used on the construction site.

Shetler observed that a dark colored, late model car had been backed up to the side door of the van and defendant and an unidentified individual wearing a "sloppy black hat" were departing from the side door. The unidentified individual immediately fled when Shetler stopped to investigate. Defendant, however, walked over to Shetler, introduced himself, and began to carry on a conversation. Defendant informed Shetler that "he was sent up from Great Falls to pick up a transit".

At trial Shetler testified that he noticed nothing suspicious at this time, because it was a common practice that the construction van be used in the evening when the construction crew worked late. Consequently, he did not attempt to restrain defendant when he locked his car and left the area on foot, leaving his car behind.

After defendant departed, Shetler began searching for a padlock that he had noticed missing from the door of the van. Upon shining his flashlight in the window of defendant's car he discovered, located on the floor between the front and rear seats,

a pair of bolt cutters with a silver padlock in its jaws. An immediate search of the van revealed some tools had been stacked up against the wall immediately inside the door, and a partially filled glass of liquor had been placed on a workbench inside the van.

Defendant's car was immediately impounded and taken by a wrecker to a local garage. Later that evening, the garage was broken into and the car removed. The state presented evidence that the car was leased by National Car Rental to defendant on December 15, 1973 and was returned on January 5, 1974.

The assistant foreman for Hogenson Construction, Nels Cornelious, testified that on the night of the alleged burglary, he locked the van prior to departing from work and no tools, except for a welder in a plywood box, had been stacked against the wall immediately inside the door. In addition, he stated that when he arrived at the storage van subsequent to the break in he noticed that a portable hand grinder, two four foot levels, two rubberheaded mallets, and a couple of smaller hammers were stacked near the door. These articles had been placed in different locations within the van when he had left work on that day.

A few days subsequent to the break in defendant was apprehended, charged with the crime of first degree burglary, tried before a jury, and convicted. Defendant appeals from that conviction and raises two issues:

1. Is the state's evidence sufficient to establish that defendant's unlawful entry into the storage van was accompanied with the intent to commit grand or petit larceny?

2. Did defendant's allegedly intoxicated condition prevent him from forming the requisite specific intent to commit the crime?

Pursuant to section 94-1-103, R.C.M. 1947, the provisions of the 1973 Montana Criminal Code do not apply to offenses committed prior to the effective date of the act. Here, the act was committed on December 21, 1973 and the 1973 Montana Criminal Code took effect on January 1, 1974. Consequently, we look to the old burglary statute, section 94-901, R.C.M. 1947, in consideration of the first issue. This statute reads:

> "Burglary defined. Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, motor vehicle and aircraft, vessel, or railroad car, with intent to commit grand or petit larceny or any felony, is guilty of burglary."

The basic thrust of defendant's argument appears to be that the state has failed to show defendant possessed the requisite intent to commit grand or petit larceny at the time of the unlawful entry, absent proof that anything was stolen from the storage van. We cannot agree. In Perkins on Criminal Law, p. 166 (1957), the author states:

> "Larceny is usually the purpose for which burglary is committed but it is not essential to guilt that the intruder succeed in carrying out the intent with which the house was broken into, nor that it should be for the purpose of stealing. There is no common-law burglary, however, unless the intrusion is perpetrated with an intent to commit some felony. Thus if a rogue breaks into the dwelling of another at night with intent to commit murder he is guilty of burglary even if he leaves without finding his intended victim and without having committed any felony in the house. On the other hand he would not be guilty of burglary if he broke in for the purpose of trespass only even if he subsequently did commit some felony during his wrongful visit."

See also: State v. Solis, 163 Mont. 293 , 516 P.2d 1157, 30 St.Rep. 1099; Morigeau v. State, 149 Mont. 85, 423 P.2d 60.

Here, the state carried the burden of showing the existence of the specific intent through the utilization of the following evidence:

1. It established the fact that a pair of bolt cutters with a padlock inside its jaws was found in a late model car that had been backed up to the side door of the van.

2. The possession of the car was traced to defendant.

- 4 -

3. It established that a group of tools had been stacked near the door of the van in anticipation of removal.

4. An eyewitness had seen defendant and another individual depart from the van.

5. Defendant had no justification nor explanation for his presence at the van.

We believe the preceding evidence, taken as a whole, is sufficient and we will not disturb the findings of the jury. Accordingly, we find no merit in defendant's contention the state failed to show a specific intent to commit grand or petit larceny or any other felony.

As to his second issue, defendant argues that he could not form the specific intent to commit the crime because of his allegedly intoxicated condition at the time of the act.

During trial, defendant presented the testimony of two witnesses. Helen Torgerson testified:

> "Q. Did you have occasion to see Gene on that evening?
> A. Yes, I did.
>
> "Q. Did you see him in Fairfield? A. Yes, I did.
>
> "Q. Do you recall what time this was? A. No, I don't. It was between 6:30 and seven, I guess.
>
> " * * *
>
> "Q. At that time, Helen, did Gene appear to have been drinking? A. Yes, he was.
>
> "Q. Would you say that he was under the influence at that time? A. Yes.
>
> "MR. GIANOTTI: That's all."

CROSS-EXAMINATION

By Mr. Joslyn;

> "Q. Under the influence--what is your understanding of that? A. Drinking. Drinking alcohol."

Richard Austad, uncle of defendant, testified:

> "Q. At that time did Gene appear to be drinking?
> A. Oh, he had a few drinks.

"Q. Did he appear to be under the influence of these drinks? A. Oh, he was feeling his own.

"Q. Did you see him any other times on that day? A. Later on in the evening.

"Q. And did he still appear to be under the influence? A. Yes."

Upon the preceding evidence, defendant attempts to show that he was too intoxicated to form the specific intent to commit the crime of burglary.

The answer to defendant's contention can be found in section 94-119(1), R.C.M. 1947, which states:

"No act committed by a person while in a state of voluntary intoxication is less criminal by his being in said condition. But, whenever the actual existence of any particular purpose, motive, or intent, is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act." (Emphasis supplied.)

The question of defendant's sobriety at the time of the criminal act was fully presented and instructions upon the subject were given by the trial court. The jury's verdict declared that defendant was able to and did entertain the necessary criminal intent. We will not disturb that verdict upon the dearth of testimony presented by defendant's two witnesses.

The judgment is hereby affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 6 -