No. 14213

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

STATE OF MONTANA,

      Plaintiff and Respondent,

-vs-

STEPHEN GONE, JR.,

      Defendant and Appellant.

---

Appeal from: District Court of the Seventeenth Judicial District,
      Honorable Leonard H. Langen, Judge presiding.

Counsel of Record:

    For Appellant:

      Peter O. Maltese argued, Glasgow, Montana

    For Respondent:

      Hon. Mike Greely, Attorney General, Helena, Montana
      Mike McCarter argued, Assistant Attorney General, Helena,
      Montana and Mark Racicot argued, Assistant Attorney General,
      Helena, Montana

    For Amicus Curiae:

      Stephen L. Pevar, Denver, Colorado

---

              Submitted: September 14, 1978

              Decided: OCT 3 0 1978

Filed: 1978

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant appeals from his conviction of the crime of aggravated assault following a jury trial in the District Court of Phillips County.

Defendant Stephen Gone, Jr. and several companions spent the afternoon and early evening of June 20, 1977, drinking and visiting friends. En route from the home of one friend to another, they stopped at Kalal's Bar and Cafe in Zortman, Montana. While seated in the cafe waiting for their order to be served, defendant used some profane language and further commented: "If one more Indian gets killed at this establishment, we're going to close it down". The bar owner, John Kalal, told defendant to leave. A scuffle ensued and defendant was forcibly ejected. Thereafter, according to one witness, defendant said, "Let's go get that gun and fix him", while another witness indicated he said "It's lucky they didn't have a gun in there."

About 4:30 the following afternoon John Kalal was working outside behind his bar building when he noticed defendant's car approaching. Sensing trouble, Kalal went in the back door of the bar and called to his wife that "they were back". As Kalal watched from inside the bar, defendant's car made a U-turn in front of the bar so that his car was parked facing the direction from which it had come. Defendant's car was 50 to 75 feet from the front of the building.

Defendant stepped out of his car with a bolt action 30-06 rifle, aimed and fired about five shots into the building where Kalal and his wife were. Defendant then sped out of town in his car. Kalal, who had flattened himself on the floor after the first shot, telephoned the authorities upon hearing defendant's car leave.

Buddy Walsh, a highway safety patrolman on the Fort Belknap

Reservation, was working on his father's ranch outside Zortman when his wife told him he had just received a call about a shooting in Zortman. He observed defendant's car speed by and gave pursuit. Defendant disregarded the siren and lights on Walsh's patrol car and the patrolman's order over the P.A. system to pull over. Defendant continued to the home of a friend with the patrolman following. When defendant finally stopped, he got out of his car and pointed his rifle at the patrolman. Walsh pointed his pistol at defendant and ordered him to drop his rifle. Defendant ignored the order and darted into the brush.

Shortly thereafter, Walsh spotted the defendant on a ridge several hundred yards away, heard a loud report, and heard a shot that sounded close to him. Walsh backed his patrol car out of range, leaving the matter in the hands of tribal police who had arrived at the scene.

Defendant was arrested the following morning. He was charged with the crimes of attempted deliberate homicide and aggravated assault arising out of the incident at Kalal's Bar and Cafe. Defendant entered a plea of "not guilty" to each charge.

Trial by jury in the District Court of Phillips County began on November 21, 1977. Two days later the jury returned a verdict of "not guilty" of the crime of attempted deliberate homicide and a verdict of "guilty" of the crime of aggravated assault. Following a presentence investigation, defendant was sentenced to a term of 40 years in the State Prison as a persistent felony offender pursuant to section 95-1507, R.C.M. 1947, as amended. The judgment and sentence further provided that defendant would be ineligible for parole or participation in the prisoner furlough program while serving the first one-half of his term pursuant to section 95-2206(3)(b), R.C.M. 1947, as amended.

Four specifications of error are presented for review in

- 3 -

this appeal: (1) Denial of defendant's motion for a jury view of the scene of the crime; (2) admission of Buddy Walsh's testimony concerning defendant's assault upon him and resisting arrest; (3) insufficiency of the evidence to support conviction; (4) the provision in the sentence that defendant would be ineligible for parole or the prisoner furlough program while serving the first half of his term.

Defendant contends it was reversible error to deny his motion that the jury be permitted to view the scene of the crime. He argues that a fundamental issue in the case was whether he could see inside the bar at the time of the shooting. If not, he argues, he could not have intended to kill or injure anyone inside. Therefore, he concludes, a jury view was required to provide a real perspective on the location and distance of defendant from the bar when the shots were fired, the location of the buildings, the size of the front windows in the bar, the size and dimension of objects in the windows that may have obstructed his vision, the lighting conditions inside the bar, and the amount of glare reflected off the windows.

Statutory authority for a jury view of the scene of the crime provides:

> "When the court deems it proper that the jury
> view any place or personal property pertinent
> to the case, it will order the jury to be con-
> ducted in a body under the custody of the sheriff
> or bailiff, to view said place or personal
> property in the presence of the defendant and
> his counsel." Section 95-1912, R.C.M. 1947.

The purpose of a jury view is to enable the jury to understand and apply the evidence given in the courtroom. State v. Cates (1934), 97 Mont. 173, 33 P.2d 578; 75 Am Jur 2d Trial, §72. The general rules governing the trial court's discretion to grant or deny a jury view has been expressed in this manner:

> "As a general principle, a view or inspection
> should be granted only where it is reasonably
> certain that it will be of substantial aid to the

- 4 -

> jury in reaching a correct verdict. The court
> may refuse to allow a view where it does not
> appear that the jury would be materially assisted
> thereby, or where they are already familiar with
> the premises involved, or where photographs, dia-
> grams, or maps in evidence adequately present the
> situation, or where the jury does not feel that
> a view would be helpful or of benefit to them.
> The court may also, in determining whether the
> view shall be permitted, consider such matters
> as expense, delay, the distance to be traveled,
> inconvenience, and the complication and uncertainty,
> or want of it, in the evidence." 88 CJS Trial §47.

Under Montana law, the matter of permitting a jury view rests entirely in the discretion of the trial court and its determination will not be overturned except in case of manifest abuse. State v. Allison (1948), 122 Mont. 120, 142, 199 P.2d 279, 292.

In this case there was extensive testimony describing the scene of the shooting, the positions of defendant and the victim, and relevant angles and measurements. Testimony was introduced concerning the measurements of the bar windows; the lighting and weather conditions; the position and distance of defendant from the bar at the time of the shooting; and the position and distance of the victim from the windows at the time of the shooting. Illustrative diagrams of the scene were drawn to aid the jury in understanding this testimony. Two color photographs of the bar were admitted in evidence, one taken from the position where testimony placed the defendant at the time of the shooting. Testimony from the victim, the victim's wife, and the deputy sheriff indicated that defendant could have seen persons inside the bar from a distance of 50 to 75 feet where testimony placed defendant. One defense witness claimed he could not see into the bar, while another defense witness claimed she could not see into the bar from 150 feet, but could see into the bar when closer than that distance.

A 45 mile trip one way from the courtroom to the scene of the crime under zero degree weather conditions was involved in a jury view. Under such circumstances the juror's ability to

perceive and appreciate the subtleties defendant suggests inhered in the scene would have been diminished, if not destroyed.

Finally there was a significant danger that the jury might be misled by the view. Six months had elapsed between the date of the crime and the time of trial. The seasons had changed; the lighting and weather conditions were substantially different; the sun was in a different position in the sky and its rays shone on the crime scene from a different angle than at the time of the crime. A substantial potential for mischief regarding any determination of opacity and glare on the bar windows was inherent in a jury view under such circumstances.

Because these substantial reasons existed for denying a jury view of the crime scene, we hold there was no abuse of discretion or error in denying defendant's motion for a jury view.

Defendant next contends that the admission in evidence of Buddy Walsh's testimony concerning defendant's assault on him and resisting arrest constituted reversible error. He argues that this testimony was irrelevant because other witnesses testified regarding intent and motive, and such testimony was prejudicial because the jury would think the worst of a person who would commit unrelated crimes against a law enforcement officer.

The controlling statute reads:

"Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b), Mont.R.Evid.

The Commission Comment to this rule notes that Montana law is consistent with the concept that purposes other than those listed may be used to admit evidence of other crimes.

In Montana the flight of defendant may be considered by the jury as a circumstance tending to prove consciousness of

- 6 -

guilt. State v. Walker (1966), 148 Mont. 216, 225, 419 P.2d 300, 305. The testimony of Buddy Walsh is also admissible on the issue of criminal intent; it has probative value as evidence of defendant's state of mind. It tends to prove that notwithstanding his drinking, defendant possessed the state of mind or intent required to constitute the crime. Balancing this probative value against the unfair prejudice defendant claims, we cannot conclude that the latter outweighs the former and renders the evidence inadmissible. Rule 403, Mont.R.Evid. We hold the evidence admissible.

Defendant claims the evidence is insufficient to support his conviction for two reasons: (1) That he was too intoxicated to form the intent that constitutes an element of the crime of aggravated assault, and (2) that his acquittal on the charge of attempted deliberate homicide is inconsistent with his conviction of aggravated assault.

We recognize that an intoxicated or drugged condition may be taken into consideration in determining the existence of a mental state which is an element of an offense. Section 94-2-109, R.C.M. 1947. However, we have recognized that each case must be determined by the jury on its own facts:

> "'The element of felonious intent in every contested criminal case must necessarily be determined from the facts and circumstances of the particular case--this for the reason that criminal intent, being a state of mind, is rarely susceptible of direct or positive proof and therefore must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.
>
> " . . .
>
> "'The question of intent is a question for the jury.'" State v. Pascgo (1977), ___ Mont.___, 566 P.2d 802, 805, 34 St.Rep. 657, 661, citing State v. Cooper (1971), 158 Mont. 102, 489 P.2d 99.

Where the record contains considerable evidence of activity by the defendant which the jury might have used to determine the degree of his intoxication, the question of the relationship

between voluntary intoxication and criminal intent will not be reconsidered on appeal. State v. Austad (1975), 166 Mont. 425, 430, 533 P.2d 1069, 1071; State v. Lukus (1967), 149 Mont. 45, 55-56, 423 P.2d 49, 55; State v. Reagin (1922), 64 Mont. 481, 489, 210 P. 86, 88.

Here the shooting took place on the day after defendant had been ejected from Kalal's bar. Uncontradicted testimony established that defendant was sufficiently in control of his faculties to drive to the bar, make a U-turn in contemplation of his escape, and aim and fire his rifle several times with calm deliberation. In the course of leaving the scene, he attempted to elude a pursuing police officer and later resisted arrest by that officer. Thus there was substantial circumstantial evidence to support a finding of the requisite criminal intent that is an element of the crime.

Defendant objects that he could not see into the bar and was merely "shooting up a building" rather than knowingly attempting to inflict serious bodily injury or reasonable apprehension of serious bodily injury as required by section 94-5-202(1), R.C.M. 1947. Even conceding that defendant might not have been able to actually see anyone inside the bar, that does not negate the possibility that he acted knowingly. There was still the jury question of whether he was necessarily aware of a high probability that someone was in the bar at 4:30 in the afternoon. Section 94-2-101(28), R.C.M. 1947. Defendants argument in this regard is not persuasive.

Likewise, we reject defendant's contention that the verdict must be reversed for inconsistency. Consistency in verdicts on multiple charges is not required in all cases. State v. Thompson (1978), ____Mont.____, 576 P.2d 1105, 1108, 35 St.Rep. 343, 347. "Inconsistency in a verdict is not in itself ground for a new trial, unless the inconsistency is such as to invalidate

- 8 -

the verdict." 24 C.J.S. Criminal Law §1450.

We find no such inconsistency present here. Contrary to defendant's contention, the elements of the crime of attempted deliberate homicide and the crime of aggravated assault are not almost identical. The two crimes are distinguishable in that the crime of attempted deliberate homicide requires a specific intent or purpose to cause death while the crime of aggravated assault does not. Under the facts here, the jury could properly find that although defendant did not specifically intend to kill anyone, he did purposefully and knowingly place another in reasonable apprehension of serious bodily injury, or he knew or should have known that there was a high probability that shooting into the bar would place another in fear of serious bodily injury.

The final issue concerns the legality of the provision in the sentence rendering defendant ineligible for parole or prisoner furlough until one-half of his sentence is served. This issue was raised by the Attorney General; the American Civil Liberties Union filed an amicus brief directed to this issue; and upon oral argument both parties agreed that this restriction could not be imposed in this case.

The crime of which defendant was convicted occurred on June 21, 1977. The statute authorizing imposition of such restriction had an effective date of July 1, 1977. Section 95-2206(3)(b), R.C.M. 1947. Thus its application here was ex post facto. A law which eliminates or delays a defendant's parole eligibility after the criminal offense has been committed is ex post facto as applied to that defendant. State ex rel. Nelson v. Ellsworth (1963), 142 Mont. 14, 380 P.2d 886; Greenfield v. Scafati (D. Mass. 1967) 277 F.Supp. 644, aff'd per curiam (1968), 390 U.S. 713. We order such restriction stricken from the judgment and sentence.

Affirmed as modified.

*Frank I. Haswell*
------------------------------------
Chief Justice

We concur:

*Gene B. Daly*
------------------------------------

------------------------------------

*John Conway Harrison*
------------------------------------

*John C. Sheehy*
------------------------------------
Justices


Mr. Justice Daniel J. Shea dissents and will file a written dissent later.