No. 14700

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

    -vs-

STEVEN DUANE HARDY, a/k/a WILLIAM EDWARD IVERSON,

        Defendant and Appellant.

_____

Appeal from:  District Court of the First Judicial District,
              Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

  For Appellant:

      Calvin J. Erb argued, Helena, Montana

  For Respondent:

      Hon. Mike Greely, Attorney General, Helena, Montana
      Chris Tweeten appeared, Assistant Attorney General,
       Helena, Montana
      Charles Graveley argued, County Attorney, Helena, Montana

_____

                              Submitted:  September 10, 1979

                              Decided:  JAN - 3 1979

Filed:  JAN - 3 1979


_____
                        Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant Steven Hardy was convicted of burglary following a jury trial in Lewis and Clark County District Court. He appeals from the judgment of conviction.

On July 22, 1978, the Helena City Police were dispatched to the Globe Clothing Store after a silent alarm was set off at approximately 6:05 a.m. Two officers in a squad car arrived at approximately 6:09 a.m. The bottom section of a glass door, which was the back door of the store, was broken and the officers observed the defendant inside the store. When the defendant observed the officers at the back door, he ran toward the front of the store. In the meantime, a second squad car had arrived in front of the store, and the officer positioned himself outside the front door which was locked. When the defendant observed the officer outside the front door, he turned and ran toward the back door.

When the defendant arrived at the back door, the officers ordered him to put his hands on his head and stay inside the building; but instead, the defendant got down on all fours and crawled through the broken part of the door. Defendant had crawled halfway out when the officers ordered him to put his hands behind his back. The defendant refused and then tried to grab the officers, at which point a struggle ensued. Defendant was pushed to the ground, and it took three officers to handcuff him. The officers then pulled the defendant the rest of the way through the door. Defendant, when placed in the squad car, started to fight and kicked out one of the windows. The defendant was removed from the squad car and escorted by foot to the police station.

The manager of the Globe Clothing Store testified that the defendant did not have permission to enter the store and that a fire extinguisher had been removed from its customary place. The

officers, in the course of their investigation, did not discover any items missing from the store.

The defendant took the stand in his own behalf and testified that he had consumed a pint of Seagram's Seven, followed by a fifth of whiskey, and that he had consumed two hits of LSD at approximately 11:00 p.m. Defendant further testified that he left a bar at 2:00 a.m. and purchased another fifth of whiskey. Defendant also testified that he consumed two additional hits of LDS at some time during the early morning hours.

At some point in the early morning hours of July 22, 1978, the defendant cut his hand, flagged down a car and went to the hospital. While at the hospital, the defendant received 25 stitches in his hand and called a cab. Defendant instructed the cab driver to take him to his brother's home, but while on his way home he asked the cab driver to stop and let him off by a bank. The defendant then entered the Globe Store although he could not remember why he had entered the store.

The defendant's sole defense throughout the trial was that he was incapable of forming the requisite intent to commit the crime of theft due to an extreme state of intoxication brought on by the use of alcohol and drugs. Various witnesses testified as to the defendant's behavior. The testimony indicated that the defendant was acting erratically, wild, was yelling and screaming and that the defendant appeared to be "hyper."

Defendant was charged by information with the burglary of the Globe Clothing Store in Helena, Montana. The jury found that the defendant was able to form the requisite intent and returned a verdict of guilty on November 14, 1978. The defendant moved for/new trial on the ground that there was insufficient evidence to support a finding of guilty. That motion was denied on January 3, 1979. Defendant appeals from the judgment of conviction entered

on the jury verdict and from the denial of his motion for a new trial.

Defendant raises these specifications of error:

(1) The District Court committed reversible error in refusing to allow opinion testimony concerning the defendant's state of intoxication.

(2) The State did not prove beyond a reasonable doubt that the defendant was capable of forming the requisite intent due to an extreme state of intoxication.

(3) The State did not prove beyond a reasonable doubt that the defendant had, at the time of entry, the required mental state to commit the offense of theft.

(4) Did the giving of the Sandstrom instruction constitute reversible error?

Defendant's first specification of error is that the District Court refused to admit testimony of law witnesses concerning defendant's state of intoxication. Defendant points out two examples of this: (1) where defense counsel, on cross-examination, asked one of the arresting police officers whether he thought defendant was on drugs; and, (2) where defense counsel on cross-examination asked a parttime security officer for the City of Helena whether he thought defendant was on drugs or drunk. Prosecution objections to these questions as calling for conclusions were sustained in each instance.

Opinion testimony from lay witnesses concerning intoxication is conversely permitted. State v. Trueman (1906), 34 Mont. 249, 85 P. 1024; also see Commission Comment, Rule 701, Mont.R.Evid., and cases cited therein. In this case the witnesses were permitted to testify as to defendant's erratic actions, responses, appearance, and condition. Defendant called an expert witness who testified concerning the effect of alcohol and drugs. Five witnesses including the defendant testified at length regarding defendant's actions

- 4 -

and behavior. Under such circumstances, the refusal of the District Court to permit the witnesses to state their opinions as to whether defendant appeared to be under the influence of drugs or intoxicated is at most harmless error not affecting the substantive rights of the defendant. See Rule 14, Mont.R.App. Civ.P.

Defendant's second specification of error is that the State did not prove beyond a reasonable doubt that he was capable of forming the requisite intent due to his extreme state of intoxication. Throughout the trial, his defense was that he could not have possibly formed the requisite intent to commit an offense once inside the Globe Clothing Store by virtue of his voluntary intoxication. Section 45-2-203, MCA, provides that an intoxicated or drugged condition may be taken into consideration in determining the existence of a mental state which is an element of an offense.

This Court has consistently held that the factual issue of intoxication is to be determined by the jury. State v. Austad (1975), 166 Mont. 425, 530, 533 P.2d 1069, 1071; State v. Medicine Bull (1968), 152 Mont. 34, 39, 445 P.2d 916, 919. The defendant introduced evidence, through his own testimony and that of the State's witnesses, concerning his actions and physical condition. The defendant was able to get all of his evidence concerning intoxication before the jury with the exception of the unsupported conclusions solicited from the other witnesses, and his own expert witness testified as to the effects of drugs and alcohol. The jury heard that testimony and was properly instructed on how to treat such expert testimony.

The jury considered the evidence and concluded that the defendant was capable of forming the requisite intent to commit an offense within the Globe Clothing Store. Where the jury has

- 5 -

been properly instructed and there is sufficient credible evidence to support its findings, the question of the relationship of voluntary intoxication to specific intent will not be reconsidered upon appeal. State v. Gone (1978), ____Mont.____, 587 P.2d 1291, 1296, 35 St.Rep. 1540, 1545. We hold there is sufficient credible evidence to support the jury's finding on the question of the defendant's state of intoxication.

Defendant's third specification of error is that the State did not prove beyond a reasonable doubt that he had, at the time of entry, the required mental state to commit the offense of theft therein. The defendant further contends that the State presented no evidence other than his unlawful presence in the Globe Clothing Store.

The State carries the burden of showing that the defendant, charged with burglary, possessed the requisite intent to commit an offense at the time of his unlawful entry into the store, even though there was no proof that anything had been stolen from the store. State v. Austad, supra, 166 Mont. at 428, 533 P.2d at 1070-1071.

The question of intent is a question for the jury. State v. Jackson (1979), ____Mont.____, 589 P.2d 1009, 1015, 36 St.Rep. 169, 176; State v. Gone, supra, ____Mont.____, 587 P.2d at 1296, 35 St.Rep. at 1545. Intent may be inferred by the jury from what the defendant does and says and from all the facts and circumstances involved in the transaction. State v. Jackson, supra, 589 P.2d at 1015, 36 St.Rep. at 176. Flight by the defendant may be considered by the jury as a circumstance tending to prove consciousness of guilt. State v. Gone, supra, 587 P.2d at 1295, 36 St.Rep. at 1544. Defendant's attempts at flight by running around the store seeking an unmanned exit serves a like purpose. The defendant, who took the stand in his own behalf, testified that he had entered the Globe Clothing Store without the owner's consent. He

- 6 -

further testified in detail as to where he had been and what he had done for many hours prior to the time he entered the Globe Clothing Store. The defendant testified that he remembered entering the store, but couldn't remember why he had entered. When the police officers arrived at the back door of the Globe Clothing Store, they observed the defendant inside the store. When the defendant noticed the officers at the back door, he ran to the front of the store. When the defendant arrived at the front of the store, he observed another officer outside the front door; and at this point he turned around and ran toward the back of the store. When apprehended, the defendant fought with the policemen, and when placed in the squad car, he kicked out one of the windows. The defendant's testimony indicated that he remembered in detail his fight with the officers. Additionally, the record reveals that a fire extinguisher, customarily anchored to a wall inside the store, had been removed from its customary position and placed on the floor near the back door of the store from which entry was accomplished and exit would presumably be made.

Only rarely can intent be proved by direct evidence.

The use of circumstantial evidence is an acceptable and often convincing method of proving criminal intent. State v. Pascgo (1977), ____Mont.____, 566 P.2d 802, 805, 34 St.Rep. 657, 661. An examination of the evidence in the instant case shows that the police arrived at the store within approximately four minutes after the silent alarm was set off. The defendant attempted to flee from the officers, fought with the officers, and kicked out one of the windows in the police car. The defendant had little difficulty in recounting in detail all of the events which occurred prior, during, and subsequent to his entry of the store except for why he had entered the store. Additionally, a fire extinguisher had been removed from its customary location and placed near the back door of the store. The weight to be given the testimony of

- 7 -

the expert witness, and the interpretation of such testimony, is for the jury. State v. O'Donnell (1972), 159 Mont. 138, 144, 496 P.2d 299, 303. In the instant case the jury considered all of the evidence, along with the defendant's version of the incident, and concluded that the defendant had entered the Globe Clothing Store with the requisite intent to commit theft.

The resolution of factual matters is for the jury and if there is substantial evidence to support the judgment, this Court must affirm the decision of the jury. State v. McKenzie (1976), 171 Mont. 278, 557 P.2d 1023. Examining the record and the totality of the circumstances, we hold that the verdict of the jury convicting the defendant of burglary is supported by substantial evidence.

The final specification of error concerns the giving of the Sandstrom instruction. We will review this alleged error even though it was raised for the first time in oral argument on appeal as the briefs were filed prior to the decision of the United States Supreme Court in Sandstrom v. Montana (1979), ____ U.S._____, 99 S.Ct. 2450, 61 L Ed 2d 39.

Here the court instructed the jury: "You are instructed that the law presumes that a person intends the ordinary consequences of his voluntary acts." This instruction was recently ruled unconstitutional in Sandstrom v. Montana, supra.

No objection was made to this instruction at the trial court level. We decline to involve the "plain error" rule because the instruction did not go to the essence of this case. See U.S. ex rel. Collins v. Crist (D. Mont. 1979), 473 F.Supp. 1354. The error is harmless beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L Ed 2d 705.

Affirmed.

_____
Chief Justice

- 8 -

We concur:

_Gene B. Daly_

_John Conway Harrison_

_____

Justices

Justice John C. Sheehy dissenting:

On the record, the defendant is guilty of a violation of section 45-6-203, MCA, criminal trespass to property, and perhaps a violation of section 45-6-101, MCA, criminal mischief and nothing more.

There is no evidence to support his conviction of burglary under section 45-6-204, MCA.

As noted in the majority opinion, the offense of burglary is committed when a person knowingly enters or remains unlawfully in an occupied structure "with the purpose to commit an offense therein." Section 45-6-204, MCA. The State proved the defendant's unlawful entry, but it failed to prove his purpose to commit an offense therein.

In State v. Rood (Ariz. 1969), 462 P.2d 399, 401, it is stated:

> "We reiterate that we have held that the entry in this case alone does not generate an inference of an intent to steal. We also believe that the State must prove that an intent to commit a specific crime existed and not just that there was an intent to commit something, undetermined at the time of entry." 462 P.2d at 401.

In State v. Austad (1975), 166 Mont. 425, 533 P.2d 1069, this Court upheld a conviction of burglary under our former statute, where the evidence showing the specific intent to steal included the following: a pair of bolt cutters with a padlock inside its jaws was found in the defendant's car which had been backed up to the side door of the structure entered; a group of tools had been stacked near the door of the structure in anticipation of removal; an eyewitness had seen defendant and another individual depart from the structure. In that case, while the court

- 10 -

recognized that the defendant would not be guilty of burglary if he broke in for the purpose of trespass only, it found sufficient supporting evidence of his intent to commit larceny under the former statute section 94-901, R.C.M., 1947.

In this case, beyond the fact that he was unlawfully in the premises, there is nothing to support any inference of his intent to commit a further crime. The single fact to which the State can point is that a fire extinguisher was found on the floor after the defendant was arrested, removed from its proper place on a wall in the store. The defendant is not connected to its removal except by inference, for the extinguisher was not even tested for fingerprints. Nothing in the store was touched. There is no telling from the evidence what he intended to do in the store, and his erratic behavior before and after the entry only further confuses what his intent may have been. Before the entry, in the early morning hours, he had somehow cut his hand, gone to the hospital, had 25 stitches taken in his hand, called a cab and was dropped off near the store where he entered. After his arrest, he was erratic, wild, yelling, screaming and had to be subdued by the officers.

I am unable to make the intellectual leap required to make this one fact of evidence rise to the level of moral certainty or beyond a reasonable doubt to support the defendant's conviction of unlawful entry "with the purpose to commit an offense therein."

_____
　　　　　　　　　　　　Justice

Mr. Justice Daniel J. Shea will file a separate opinion later.

- 11 -