No. 03-563

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 87

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ZANE CARTER,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. BDC 2002-319
The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Carl B. Jensen Jr., Public Defender Office, Great Falls, Montana

For Respondent:

Honorable Mike McGrath, Montana Attorney General, John Paulson,
Assistant Attorney General, Helena, Montana; Brant S. Light, Cascade
County Attorney, Marty Judnich, Deputy County Attorney, Great Falls,
Montana

Submitted on Briefs:  December 8, 2004

Decided:  April 5, 2005

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Zane Carter (Carter) appeals from the judgment entered by the District Court of the Eighth Judicial District, Cascade County, on a jury verdict finding him guilty of the offense of driving while under the influence of alcohol (DUI). We affirm.

On appeal, we address the following issues:

1. Is Carter's appeal properly before this Court?

2. In a criminal trial for DUI, is the Sixth Amendment right to confront witnesses implicated when the State introduces a certification report for a breath analysis instrument without also providing the author of the report for cross-examination?

## FACTUAL AND PROCEDURAL BACKGROUND

Carter was driving through Great Falls on May 14, 2002, when he was pulled over by Officer Michael Reddick of the Montana Highway Patrol. Officer Reddick stopped Carter after seeing him drive recklessly near a group of pedestrians. When Carter exited his vehicle, Officer Reddick noticed the odor of alcohol on him. Because Reddick was about to go off duty, he turned the matter over to Officer Robert Armstrong of the Montana Highway Patrol, who had also observed Carter's reckless driving. Armstrong also noticed the smell of alcohol on Carter.

Carter was arrested after he failed the field sobriety tests administered by Officer Armstrong. Carter consented to a breath alcohol test, which was administered with the Intoxilizer 5000. The test registered a result of .210. Carter was charged with one count of misdemeanor DUI, one count of misdemeanor failure to carry proof of liability insurance, and one count of misdemeanor driving with a suspended license. After a jury trial in Cascade County Justice Court on July 23, 2002, Carter was convicted on all three counts. Carter appealed to the District Court. Subsequently, the charge of driving with a suspended license was dismissed.

At Carter's District Court jury trial on May 29, 2003, the State introduced three certification reports in order to demonstrate that the Intoxilizer 5000 was working properly when it was used to test Carter. First, the State introduced two weekly field certification reports. One was prepared by Deputy Troy Leasure, of the Cascade County Sheriff's Department. The other was prepared by Deputy Kenneth Wienheimer, also of the Cascade County Sheriff's Department. Then, the State introduced the yearly certification report prepared by Benny Better of the Montana State Crime Lab. After testifying that he was the senior operator for the Intoxilizer 5000, Deputy Leasure testified that each of these reports indicated that the machine had tested within the acceptable range for certification.

Carter objected to the admission of the weekly field certification report prepared by Deputy Wienheimer, arguing that it was hearsay because Wienheimer was not present to testify. Carter also objected to the admission of the yearly certification report prepared by the Montana State Crime Lab, arguing that it was hearsay because the author was not present to testify. Finally, Carter objected to the admission of the Montana State Crime Lab report on the grounds that the State had failed to provide the necessary foundation. In support of this objection, Carter argued the State needed to demonstrate that the author fully understood the inner workings of the Intoxilizer 5000. The District Court admitted both reports over Carter's objections.

Carter was convicted of misdemeanor DUI and misdemeanor failure to carry proof of liability insurance. Carter appeals his DUI conviction and requests a new trial on the grounds that the admission of the weekly and yearly certification reports is a violation of his Sixth Amendment confrontation right.

**DISCUSSION**

3

**Issue 1.**

*Is Carter's appeal properly before this Court?*

Because Carter asserts a legal theory that was not raised at trial, the threshold issue is whether this Court should consider the merits of his argument. As noted above, Carter objected to the admission of two certification reports which the State proffered to demonstrate that the Intoxilizer 5000 was working properly when it was used to test him. One of these reports was a weekly field certification prepared by Deputy Wienheimer. The other was a yearly certification prepared by the Montana State Crime Lab. The District Court admitted both reports over Carter's hearsay objections.

Carter's appeal focuses on these same two pieces of evidence, but he no longer stands by his original hearsay objections. Instead, he now asserts a theory that was not available to him at trial. Carter's argument is based on *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, which established a new constitutional rule of criminal procedure while Carter's case was on direct appeal before us. Carter now argues that admission of the certification reports, when the authors are not present for cross-examination, is a violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution pursuant to *Crawford*. Further, Carter argues that *Crawford* should be applied retroactively in his case, pursuant to *State v. Whitehorn*, 2002 MT 54, 309 Mont. 63, 50 P.3d 121, and that retroactive application mandates a new trial wherein he is entitled to confront the authors of these certification reports regarding the procedures they used to maintain the Intoxilizer 5000. In response, the State suggests that we decline review of Carter's Sixth Amendment claim because his objections at trial were not based on his right of confrontation. In supporting this position, the State cites the firmly established rule that a party may not raise new

4

arguments or change its legal theory on appeal. *State v. Heath*, 2004 MT 58, ¶ 39, 320 Mont. 211, ¶ 39, 89 P.3d 947, ¶ 39.

13      While we generally do not consider arguments first raised on appeal, our precedent clearly establishes that review of such arguments is proper in certain circumstances. We have stated:

> [T]he general rule is that issues brought before this Court for the first time on appeal will not be considered. [Citation omitted.] However, this Court "reserves to itself the power to examine constitutional issues that involve broad public concerns to avoid future litigation on a point of law." Even if an issue is raised for the first time on appeal this Court can hear the issue "if the alleged . . . error affects the substantial rights of a litigant."

*Cottrill v. Cottrill Sodding Serv.* (1987), 229 Mont 40, 42, 744 P.2d 895, 896 (quoting *Matter of N.B.* (1980), 190 Mont. 319, 323, 620 P.2d 1228, 1231). Due to our commitment to the general rule against raising new arguments on appeal, we do not often utilize the *Cottrill* rationale, the plain error doctrine, or other precedents which allow us to review arguments first raised on appeal. However, our commitment to that general rule does not negate our overriding obligation to acknowledge and protect the substantial rights of litigants. This overriding obligation is well reflected in the firmly established *Cottrill* exception to the general rule.

14      Other precedent issued from this Court provides further rationale for departing from the general rule in certain circumstances. In *Kudrna v. Comet Corp.* (1977), 175 Mont. 29, 572 P.2d 183, we considered an issue that was not raised below, noting that by doing so we did not repudiate the requirement that timely and specific objections be raised at trial. We observed that "[i]f the court were limited to the arguments and reasoning of counsel in its decisions of cases, to the exclusion of

its own observations, many cases would lead us far from what we understand to be the true object of the court." *Kudrna*, 175 Mont. at 51, 572 P.2d at 195 (quoting *Big Creek Stone Co. v. Seward* (Ind. 1896), 43 N.E. 5, 5). We also stated that "[w]here resort to the record is necessary, the case will be determined by the record, and in such a case the court will not regard itself as bound down to the conceptions of counsel on either side as to the nature of the controlling facts." *Kudrna*, 175 Mont. at 51, 572 P.2d at 195 (quoting *Cleveland, Cinc., Chic. & St. Louis Ry. Co. v. Moore* (Ind. 1908), 84 N.E. 540, 540). Hence, it is evident that in the same way which we are not bound to render decisions based solely on the reasoning offered by appellate counsel, our review is not necessarily restricted by trial counsel's failure to preserve a specification of error for appeal.

15      We have previously encountered an appeal similar to the one we face here. In *State v. Hardy* (1980), 185 Mont. 130, 604 P.2d 792, the defendant contested for the first time on appeal a jury instruction given at his trial because that instruction was later declared unconstitutional by the United States Supreme Court. *Hardy*, 185 Mont. at 137, 604 P.2d at 797. Because the instruction was declared unconstitutional while the defendant's appeal was pending, we reviewed the defendant's argument even though it was not raised at trial. *Hardy*, 185 Mont. at 137-38, 604 P.2d at 797. *Hardy* thus provides a basis for considering an argument first raised on appeal where that argument is based on a new constitutional rule of criminal law established during the appeal. Here, Carter's predicament is similar to that of the defendant in *Hardy*, in that Carter had no opportunity to make a timely confrontation argument based on *Crawford* because that case was decided more than nine months after his trial.

16      Returning to the *Cottrill* exception, we note that it is well established by its use in recent years to justify review of constitutional claims not raised at the lower court. In *Eastman v. Atlantic*

*Richfield Co.* (1989), 237 Mont. 332, 337, 777 P.2d 862, 865, we invoked the exception to review two untimely constitutional challenges to the Occupational Disease Act. More recently, in *In the Petition to Transfer Territory*, 2000 MT 342, ¶ 11, 303 Mont. 204, ¶ 11, 15 P.3d 447, ¶ 11, we invoked the exception to consider the constitutionality of a statute giving authority to county superintendents of schools to grant or deny petitions to transfer territory among school districts.

17      Our review of the record in Carter's case leads us to conclude that this appeal contains the elements necessary for invoking the *Cottrill* exception. The substantial right at issue here is Carter's Sixth Amendment right to confront witnesses against him. By reviewing the merits of Carter's argument we can avoid future litigation on the issue of whether certification reports for breath testing instruments represent "testimonial" hearsay which triggers the protections of the Sixth Amendment's Confrontation Clause. Finally, broad public concern is implicated by Carter's contention that the State is obligated to provide State Crime Lab personnel at DUI trials to testify regarding the certification reports. As such, we conclude that review of Carter's argument is proper pursuant to *Cottrill*, *Kudrna*, and *Hardy*.

18      Finally, we observe that appellate review of Carter's argument flows logically from the requirements of retroactivity law. Once a new constitutional rule of criminal procedure is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated. *State v. Goebel*, 2001 MT 155, ¶ 16, 306 Mont. 83, ¶ 16, 31 P.3d 340, ¶ 16 (citing *Teague v. Lane* (1989), 489 U.S. 288, 300, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334). Thus, we apply new constitutional rules of criminal procedure retroactively to cases pending on direct review or not yet final on the date of the new ruling. *Goebel*, ¶¶ 14-17 (citing *Griffith v. Kentucky* (1987), 479 U.S. 314, 326-27, 107 S.Ct. 708, 715-16, 93 L.Ed.2d 649). As

noted above, *Crawford* announced a new constitutional rule of criminal procedure while Carter's case was pending on direct review before this Court. Carter argues that *Crawford* is applicable to his case and, had it been decided at the time, *Crawford* would have dictated the use of different procedures at his trial. If *Crawford* is in fact applicable here, Carter is entitled to retroactive application of the new rule established therein. Thus, to determine whether the new rule enunciated in *Crawford* should be applied retroactively in this case, we must examine Carter's argument. The *Cottrill* exception allows us to reach the merits of Carter's claim and determine whether the new rule of *Crawford* applies here.

19    In summary, we reiterate our commitment to the general rule against raising new arguments on appeal. At the same time, however, we are compelled to take into account the unique circumstances of Carter's appeal with respect to the recent development in Confrontation Clause jurisprudence. Strict adherence to the general rule, in spite of Carter's inability to timely raise the *Crawford* argument, is not appropriate here. As we observed in *Kudrna*, such an approach could occasionally "lead us far from what we understand to be the true object of the court." *Kudrna*, 175 Mont. at 51, 572 P.2d at 195. Ultimately, our decision to review Carter's argument harmonizes well with our previous invocations of the *Cottrill* exception.

## Issue 2.

20    *In a criminal trial for DUI, is the Sixth Amendment right to confront witnesses implicated when the State introduces a certification report for a breath analysis instrument without also providing the author of the report for cross-examination?*

21    In determining whether the procedure followed at Carter's trial complies with the Sixth Amendment, we address a question of constitutional law. We exercise plenary review of questions

8

of constitutional law. *Pickens v. Shelton-Thompson*, 2000 MT 131, ¶ 7, 300 Mont. 16, ¶ 7, 3 P.3d 603, ¶ 7.

22 The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This procedural guarantee, the Confrontation Clause, applies to both federal and state prosecutions. *Pointer v. Texas* (1965), 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923. The ultimate goal of the Confrontation Clause is to ensure the reliability of evidence "by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61, 124 S.Ct. at 1370.

23 As noted above, Carter's argument is based on *Crawford*, a case that was born out of the inherent tension between the Confrontation Clause and exceptions to the general evidentiary rule against admitting hearsay at trials. In *Crawford*, the Court overruled its prior interpretation of the Confrontation Clause established in *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597. *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374. *Roberts* held that an unavailable witness's out-of-court statement may be admitted at trial against a criminal defendant so long as it has adequate indicia of reliability--*i.e.*, falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539. In rejecting this approach, *Crawford* observed that reliability is an amorphous concept and stated that the *Roberts* framework "is so unpredictable that it fails to provide meaningful protection from core confrontation violations." *Crawford*, 541 U.S. at 63, 124 S.Ct. at 1371.

24 In *Crawford*, the Court reviewed historical developments underlying the meaning of the Confrontation Clause and, for the first time, distinguished "testimonial" and "nontestimonial" out-of-court statements. *Crawford*, 541 U.S. at 51-52, 124 S.Ct. at 1364. The Court held that

testimonial out-of-court statements are not admissible at trial under the Confrontation Clause, unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374.

25      While declining to spell out a comprehensive definition of the term "testimonial," the Court held:

> Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

*Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374. The Court also observed that not all hearsay evidence implicates the Sixth Amendment's core concerns. *Crawford*, 541 U.S. at 51, 124 S.Ct. at 1364. Consequently, *Crawford* held that where nontestimonial hearsay is at issue, States are allowed flexibility in the development of their hearsay law. *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374.

26      In the present case, Carter requests a new trial based on *Crawford's* new interpretation of the Confrontation Clause. Specifically, Carter argues that the certification reports admitted at his trial are properly categorized as testimonial hearsay pursuant to *Crawford*, and thus, admission of such reports is a violation of the Confrontation Clause when the authors are not present for cross-examination. Further, Carter argues that because a constitutional right is at issue in this case, *Crawford* should be applied retroactively. Finally, Carter argues that retroactive application of *Crawford* requires a new trial wherein he is entitled to confront the authors of the two contested certification reports regarding the procedures they used to maintain the Intoxilizer 5000.

27      The State contends that the procedure followed at Carter's trial was in compliance with the new rule of *Crawford*. The State's argument is based on *State v. Delaney*, 1999 MT 317, 297 Mont. 263, 991 P.2d 461, a DUI case where the State introduced a yearly certification report for the

10

Intoxilizer 5000 in order to establish foundation for the admission of breath test results. *Delaney*, ¶ 10. The defendant in that case, Robert Delaney, argued that his constitutional right to confront witnesses was violated when the State introduced the certification report without also presenting the author of the report for cross-examination. *Delaney*, ¶ 17. We held that Delaney had not established a violation of his confrontation right because the annual certification report was not substantive evidence used to prove the charged DUI offense, but it merely provided the foundation necessary for the admission of substantive evidence. *Delaney*, ¶ 18.

28 In *Delaney*, we distinguished *State v. Clark*, 1998 MT 221, 290 Mont. 479, 964 P.2d 766, wherein we held that the hearsay exception in Rule 803(8), M.R.Evid., which allowed admission of a state crime laboratory report into evidence without the testimony of the compiler of the report, was unconstitutional because it violated the defendant's right to confrontation. *Clark*, ¶ 25. Delaney relied on *Clark* in arguing that his confrontation right had been violated. *Delaney*, ¶ 17. Delaney contended that at his trial the State had offered the annual certification report as a state crime laboratory report pursuant to language in Rule 803(6), M.R.Evid., which is identical to the portion of Rule 803(8) held unconstitutional in *Clark*, and as a result, his right to confrontation was violated in the same manner as the defendant's in that case. *Delaney*, ¶ 17. In distinguishing *Clark*, we explained in *Delaney* that the evidence offered under the state crime laboratory report hearsay exception in *Clark* was a report of the chemical analysis of alleged drugs taken from the defendant when he was arrested. *Delaney*, ¶ 18. That chemical analysis was a critical part of the substantive evidence offered by the prosecution to prove that the defendant had committed the offense of criminal possession of dangerous drugs. *Clark*, ¶ 24. Thus, we concluded in *Clark* that failing to call the compiler of the chemical analysis report violated the defendant's right to confront his

accusers. *Clark*, ¶ 25. More importantly for this case, in *Delaney* we explained that *Clark* was distinguishable from Delaney's situation because the annual certification report used in *Delaney* was not accusatory in the same manner as the chemical analysis in *Clark*. *Delaney*, ¶ 18. Finally, we concluded that because the certification report used in *Delaney* was not offered or admitted pursuant to the state crime laboratory hearsay exception, *Clark* was inapplicable. *Delaney*, ¶ 19.

29     Our decision in this case turns on the issue of whether the certification reports are properly categorized as testimonial or nontestimonial evidence. Carter contends that testimonial evidence includes "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52, 124 S.Ct. at 1364. Based on this definition, Carter contends that the certification reports at issue here are properly categorized as testimonial evidence because they were created for use at trial.

30     We observe that while *Crawford* did mention the above definition for testimonial evidence, it did so only in noting various proposed formulations of the core class of statements with which the Confrontation Clause is concerned. *Crawford*, 541 U.S. at 51-52, 124 S.Ct. at 1364. *Crawford* also mentioned the following formulations: *ex parte* in-court testimony or its functional equivalent, meaning material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; and, extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions. *Crawford*, 541 U.S. at 51-52, 124 S.Ct. at 1364. However, *Crawford* did not adopt any of the above definitions, and declined to

12

articulate a precise definition for testimonial evidence. *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374.

31      Ultimately, *Crawford* designated only four kinds of statements as testimonial:  prior testimony given at a preliminary hearing, before a grand jury, or at a former trial, and statements gleaned from police interrogations. *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374.  Similarly, we will not attempt to articulate a precise definition of testimonial evidence.  We will only determine whether the evidence at issue here is properly categorized as testimonial or nontestimonial.

32      The State argues that the certification reports used at Carter's trial are nontestimonial evidence because they do not fall within the core group of statements which the Confrontation Clause was meant to address, and thus do not implicate Carter's right of confrontation.  We agree. As we stated in *Delaney*, such certification reports are not substantive evidence of a particular offense, but rather are foundational evidence necessary for the admission of substantive evidence. *Delaney*, ¶ 18.  In other words, the certification reports are nontestimonial in nature in that they are foundational, rather than substantive or accusatory.  In the same way that the defendant's confrontation right was not implicated in *Delaney*, Carter's confrontation right was not implicated by the use of these certification reports, despite the fact that the authors of the reports were not present to testify and be confronted.

33      That is not to say, however, that the authors of these certification reports may never be called to testify in person.  If, in a given case, the defendant's pretrial investigation reveals that the reports are in error or are otherwise subject to attack, the defendant is always free to subpoena the authors for purposes of testifying at a hearing on a timely filed motion to suppress evidence or at trial for impeachment purposes.

*Crawford* established that where nontestimonial hearsay is at issue, the United States Constitution affords the States flexibility in forming their hearsay law, and such evidence may be exempted from Confrontation Clause scrutiny. *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374. Thus, we adhere to the rationale of *Delaney* and hold that the nontestimonial pieces of evidence at issue here, the weekly and yearly certification reports for the Intoxilizer 5000, do not implicate Carter's constitutional right of confrontation. Therefore Carter is not entitled to a new trial.

Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER

Justice W. William Leaphart specially concurring.

I concur in the result reached in this case.

The functional difference between the hearsay rule and the Confrontation Clause has to do with the type of out-of-court statements addressed by each. While the hearsay rule is concerned with all out-of-court statements, "not all hearsay implicates the Sixth Amendment's core concerns." *Crawford*, 541 U.S. at___, 124 S.Ct. at 1364, 158 L.Ed.2d at 192. In *Crawford*, the United States Supreme Court explained that the Confrontation Clause is concerned with "testimonial statements" made by those who are "witnesses against" the accused, or those who "bear testimony." *Crawford*, 541 U.S. at ____, 124 S. Ct. at 1364, 158 L.Ed.2d at 192. In other words, the Confrontation Clause does not reach "nontestimonial" hearsay.

In the present case, we conclude that, since certification reports are non-substantive and non-testimonial in nature, a more specific Confrontation Clause objection was necessary.

I would not, however, necessarily require this degree of specificity under all circumstances. For example, in a case involving a substantive out-of-court statement against the accused, defense counsel could make a colorable argument that a hearsay objection to the statement would double as a Confrontation Clause objection, since, under those circumstances, the hearsay rule is protecting the same values as the Confrontation Clause– i.e., excluding out-of-court testimonial statements by those who bear witness against the accused.

/S/ W. WILLIAM LEAPHART

Chief Justice Karla M. Gray, dissenting.

I respectfully dissent from the Court's determination that Carter's appeal is properly before us. Nor do I agree with the Court that the theory now advanced was not "available" to him at trial. I would hold the appeal is not properly before us and, on that basis only, affirm the District Court.

As the Court properly observes, Carter's counsel asserted hearsay objections to the evidence at issue during his trial. He has now abandoned those objections and raises a new theory on appeal. As the Court also properly observes, we generally do not consider arguments first raised on appeal. We should follow that longstanding general rule here.

Instead, the Court first begins by stating Carter's Confrontation Clause argument was not available at trial, and goes on to note that the argument is based on the U.S. Supreme Court's recent *Crawford* decision. It is true that the *Crawford* decision was not available during Carter's trial. That does not, however, equate to the argument being unavailable. Confrontation Clause arguments pursuant to the Sixth Amendment to the United States Constitution have been available since that Clause became applicable to the states via the Fourteenth Amendment. Equating the unavailability of a particular court decision to the unavailability of the Sixth Amendment argument simply enables counsel to neglect consideration of available constitutional challenges until such time as another lawyer has had the foresight to make such an argument in her or his case, and then piggyback onto the other lawyer's sound thinking and resulting success. I am not persuaded the Court is wise in encouraging such conduct by Montana lawyers in representing defendants in criminal cases.

Moreover, I am very concerned over how far afield the Court had to search in order to determine this appeal is properly before us. It cites to a number of "ways out" of the general rule, such as the "exceptions" in the civil cases of *Cottrill*, *Kudrna*, *Eastman* and *Petition to Transfer*.

The Court does not clearly point out that those were civil cases--and understandably so, since different "exceptions" apply in the criminal case arena.

44      Indeed, the two most common "exceptions" to the general rule of no new theories on appeal in criminal cases are § 46-20-701, MCA, and the common law "plain error" doctrine we apply very sparingly. *See State v. Finley* (1996), 276 Mont. 126, 915 P.2d 208, *overruled on other grounds by State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, ¶ 21, 19 P.3d 817, ¶ 21. The Court does not mention these authorities for occasionally allowing a criminal defendant on appeal to raise a new theory. The reason the Court avoids these approaches, and searches out others, may be that Carter does not raise these either.

45      In fairness, I note that the Court advances *Hardy*, a criminal case, as an appeal "similar" to the one we face here. The Court includes only a few sweeping statements about *Hardy* in its opinion. In fact, no basis at all is set forth in *Hardy* for the decision to "review th[e] alleged error" raised for the first time on appeal.

46      The only basis on which Carter relies in requesting that he be permitted to raise the Confrontation Clause issue from *Crawford* is our decision regarding retroactivity in *State v. Whitehorn*, 2002 MT 54, 309 Mont. 63, 50 P.3d 121. Again, the Court does not rest its analysis of why this appeal is properly before us on that sole case cited by Carter; one can only speculate about why. Instead, the Court advances *Goebel*, a case which predated *Whitehorn*, as support for its observation that appellate review of Carter's argument "flows logically from" the requirements of retroactivity. Does the Court mean that retroactivity law *requires* review of Carter's argument? If so, the Court should clearly state why that is so. If not, what precise basis is the Court advancing for its conclusion that we "are compelled" to take into account the "unique" circumstances of the appeal before us with respect to "the recent development in Confrontation Clause jurisprudence."

Perhaps the broadest--and most frightening--statement the Court makes in searching for a "way out" in the present case is the following:

> [I]t is evident that in the same way which we are not bound to render decisions based solely on the reasoning offered by appellate counsel, our review is not necessarily restricted by trial counsel's failure to preserve a specification of error for appeal.

No authority is cited for this statement. But a fair reading makes it clear that the Court intends to recognize no bounds in reaching an issue it wants to reach at any time and in any case. I suspect this unsupported statement will be quoted in future cases when the Court does not wish to conduct itself within any applicable parameters.

The Court having failed to set forth an adequate basis--from applicable cases--for its decision that Carter's appeal is presently before us, I dissent from its conclusion in that regard and would not address the issue raised.

/S/ KARLA M. GRAY

Justice Jim Rice joins in the foregoing dissenting opinion of Chief Justice Gray.

/S/ JIM RICE