NO.    94-369

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

CHAD ROTHACHER,

        Defendant and Appellant.

FILED

AUG 11 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and for the County of Flathead,
                The Honorable Michael H. Keedy, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Charles F. Moses, Moses Law Firm,
            Billings, Montana

        For Respondent:

            Hon. Joseph P. Mazurek, Attorney General,
            Cregg W. Coughlin, Assistant Attorney General,
            Helena, Montana

            Thomas J. Esch, Flathead County Attorney,
            Kalispell, Montana


                        Submitted on Briefs:    April 27, 1995

                                  Decided:    August 11, 1995

Filed:

_____
                Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The defendant, Chad Rothacher, was charged in the District Court for the Eleventh Judicial District in Flathead County with deliberate homicide, in violation of § 45-5-102, MCA. Following a trial by jury, Rothacher was convicted of mitigated deliberate homicide in violation of § 45-5-103, MCA. Rothacher appeals from his conviction. We affirm the judgment of the District Court.

Rothacher raises the following issues on appeal:

1. Did the District Court err when it instructed the jury that it was not necessary for the State to prove that Rothacher intended to cause the death of the victim?

2. Was Rothacher's conviction of mitigated deliberate homicide supported by substantial evidence?

FACTUAL BACKGROUND

On February 10, 1993, Rothacher was charged by information with deliberate homicide. He denied that he was guilty of the crime charged, and therefore, proceeded to trial on February 15, 1994.

At trial, Michael LeClere, an employee and friend of the victim, Ron Raper, testified to the events that occurred on the evening of Raper's death. He stated that on December 11, 1992, he went with Raper and Susan Michael to the Palace Bar in Whitefish. LeClere and Raper played pool with Rothacher and Rothacher's friend. Raper and Rothacher began arguing about the pool game. As the argument escalated, Raper and Rothacher agreed to go outside.

2

As LeClere joined them outside, he saw Rothacher hit Raper in the side of the head and then hit Raper in the nose. After he was hit with the second punch, Raper fell on his back and hit his head hard on the ice. LeClere testified that Raper's head hit the ice with such an impact that it sounded like a bowling ball falling off of a table onto a hard floor. As Raper began to pick himself up from the ground, Rothacher kicked him in the head. Rothacher was then restrained by his friends and together they left the scene. Raper was taken to Kalispell Regional Hospital, where he was treated by Dr. James Mahnke, a neurosurgeon.

Dr. Mahnke testified that when he first saw Raper, he was comatose. A CT-scan revealed extensive bruising on his brain, and Dr. Mahnke determined that this was a serious injury. He performed surgery to remove portions of Raper's skull and relieve pressure on the brain. However, Raper's injuries were so great that the surgical procedure was unsuccessful. When asked if, in his opinion, Rothacher's kick to Raper's head caused his death, Dr. Mahnke replied, "I think that it most likely did." The defendant did not object to Mahnke's opinion regarding the cause of Raper's death.

Dr. Gary Dale, the State Medical Examiner, and a forensic pathologist, performed a post-mortem examination of Raper at the request of the Flathead County Coroner. It was his opinion, as expressed at trial, that Raper died because of complications from blunt impact injuries to the head.

Witnesses called by the defendant did not deny that Raper was hit in the head by Rothacher, that as a result, he fell to the ground and struck his head, nor that Raper was subsequently kicked in the head by Rothacher.

The jury found Rothacher guilty of mitigated deliberate homicide. His motions for judgment notwithstanding the verdict and for a new trial were denied.

The District Court sentenced Rothacher to 16 years in the Montana State Prison, with all but six years suspended. Rothacher appeals from the judgment of the District Court.

<u>ISSUE 1</u>

Did the District Court err when it instructed the jury that it was not necessary for the State to prove that Rothacher intended to cause the death of the victim?

The standard of review of jury instructions in criminal cases is "[w]hether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case." *State v. Brandon* (Mont. 1994), 870 P.2d 734, 737, 51 St. Rep. 244, 246 (citing *State v. Lundblade* (1981), 191 Mont. 526, 529-30, 625 P.2d 545, 548).

Rothacher contends that based on historical and commonly accepted notions of criminal jurisprudence, and on the plain language of this State's penal code, the crime of intentional homicide requires a "specific intent" to cause another's death and that the District Court erred when it instructed the jury otherwise. The specific instruction to which Rothacher objects is

4

the court's Instruction No. 14 by which the jury was advised as follows :

> In order to convict the defendant of Deliberate Homicide, it is not necessary for the State to prove that the defendant intended to cause [the] death of [the] victim. Death may not be the intended result, but, if the act which causes the death is done **purposely,** and no circumstances of mitigation, excuse or justification appear, deliberate homicide is committed unless the result is too remote or accidental to have a bearing on the offender['] s liability or on the gravity of the offense.

(Emphasis added.)

"It is no longer necessary to prove specific intent as an element of the crime unless the statute defining the offense requires as an element thereof specific purpose." *State v. Van Dyken* (1990), 242 Mont. 415, 434, 791 P.2d 1350, 1362, *cert. denied* (1990), 498 *U.S.* 920, *111* S.ct. 297, 112 L. Ed. 2d 251 (citing *State v. Starr* (1983), 204 Mont. 210, 218, 664 P.2d 893, 897). Section 45-5-102, MCA, provides in relevant part that: "(1) A person commits the offense of deliberate homicide if: (a) he purposely or knowingly causes the death of another human being . . . ."

To prove that a person acts knowingly with regard to a result of his conduct does not require that he intended the specific result, but only that he be aware of a high probability that the result will be caused by his conduct. Section 45-2-101(33), MCA. A person acts purposely with respect to a result when it is his or her conscious object to cause that result. Section 45-2-101(58), MCA. However, the statutory meaning of both states of mind **must** be

5

read in combination with § 45-2-201, MCA, which provides in relevant part that:

> (2) If purposely or knowingly causing a result is an element of an offense and the result is not within the contemplation or purpose of the offender, either element can nevertheless be established if:
> . . .
> (b) the result involves the same kind of harm or injury as contemplated but the precise harm or injury was different or occurred in a different way, unless the actual result is too remote or accidental to have a bearing on the offender's liability or on the gravity of the offense.

For these reasons, we held in *Van Dyken* that:

> [A] defendant can properly be convicted of deliberate homicide even though he may not have intended that the death result from the act where he contemplated the same kind of harm or injury to the victim.

*Van Dyken*, 791 P.2d at 1362 (citing *State v. Sigler* (1984), 210 Mont. 248, *265, 688* P.2d 749, 757).

Therefore, while our statutory law does not require proof that Rothacher intended the specific result of his act, it does at least require that he intended a similar kind of harm. It is not sufficient, as indicated in Instruction No. 14, that the act which caused the harm be done purposely without regard to whether any harm was intended. Instruction No. 14 is, however, a correct reflection of our prior decisions on this subject.

Our seminal case, which we conclude has been misapplied in subsequent cases, was *Sigler* In that case, the defendant was charged with and convicted of deliberate homicide for causing the death of a 19-month-old child who was left in his care. The child

died as a result of blunt force trauma to the abdomen which perforated the small bowel in two places and caused peritonitis. The evidence was that the most likely source for the trauma was a blow from a fist or foot. On appeal, the defendant argued that the district court's instructions erroneously permitted the jury to convict him simply for purposely engaging in the conduct of striking the child, without requiring the jury to find that he intended the child's death. After discussing the purposeful and knowing requirement of the deliberate homicide statute in relation to causation, as explained in § 45-5-201(b), MCA, we held that:

> Applying § 45-Z-201 to this case, the proof is beyond any doubt that the conduct which brought about the perforations to the child's bowels caused the death of the child, and that without such conduct, the death would not have occurred. In addition, the result involves the same kind of harm or injury as contemplated by the conduct *even* though the precise harm, the death, was different or occurred in a different way. In other words, if Sigler voluntarily, as the jury found, punched with his fist or kicked with his foot the stomach of the child, even though he may not have *intended* that death result from the act, he contemplated "the same kind of harm or injury" to the child, that is, harm or injury to the abdominal area of the child.

*Sigh*, *688* P.2d at 754-55.

On that basis, we held that it was not necessary for the district court to have instructed the jury in that case that the defendant had a specific intent to cause the child's death. We cited with approval our prior decision in *State v. Starr* (1983), *204* Mont. 210, 218, 664 P.2d 893, 897, where we held that:

> We do not agree with Starr, however, on his contention that it was the duty of the State to prove

7

Starr's *specific intent* to transfer a dangerous substance then or at a subsequent time. Since Montana revamped its criminal statutes in 1973 by adopting in essence the Model Penal Code, specific intent is not an elemental concept, unless the statute defining the offense requires as an element thereof a specific purpose.

*Sigler*, 688 P.2d at 755.

Up to that point, our reasoning was correct, although insufficient to affirm the actual instructions given by the district court. We then added the following language, which was incorrect:

Our criminal law proscribes purposely doing an act which causes the death of another *[actually our criminal law proscribes doing an act which purposely causes the death of another]*; it also proscribes doing an act with the conscious object of causing the death of another. In the former, death may not be the intended result, but if the act which causes the death is done purposely, deliberate homicide is committed. In the latter, death is the intended result, and any act of the defendant which leads to that intended result is deliberate homicide.

*Sigler*, 688 P.2d at 755.

Two members of the Court objected to this additional language and pointed out that: "By judicial fiat, the law in Montana is that a defendant who acts with purpose and accidently causes the death of another, is guilty of deliberate homicide." *Sigler*, 688 P.2d at 756.

Sigler petitioned for rehearing based on the language that the dissent found objectionable. He correctly contended that the language broadened the definition of deliberate homicide to include the crime of negligent homicide. His point was so obvious that the State agreed that the language was inappropriate, but suggested that Sigler's conviction be affirmed anyway. Chagrined by the fact

8

that both parties agreed that language in its opinion was inaccurate and objectionable, the majority, in its memorandum in response to the petition for rehearing, stated that:

> The Attorney General has thus conceded the major premise of the minority opinion filed with the original in this case. A concession of such broad dimensions does not wring from the Attorney General an admission that Sigler is entitled to a new trial however. Instead the State continues to contend that the jury in the Sigler case was "adequately instructed."

*Sigh*, 688 P.2d at 756-57.

In spite of objections by Sigler, which were concurred in by the State, this Court rejected the criticism of its opinion, but clarified its import as follows:

> It should be clear, following our original Sigler opinion, that deliberate homicide is committed when a person purposely or knowingly causes the death of another human being; and that the word "causes" in the statutory definition of deliberate homicide must be read in conjunction with section 45-z-201, MCA, which describes what constitutes a causal relationship between the conduct and the result. The original opinion states again what had been stated in *Coleman* (Mont. 1979), 605 P.2d 10001, that a person acts knowingly when there is proof beyond a reasonable doubt that he is aware of the high probability of the result of his conduct. Finally, there is a causal relationship though the result is not within the contemplation of or purpose of the defendant, where the same kind of harm or injury is contemplated by him though the precise harm or injury is different or occurred in a different way.

Sigler , 688 P.2d at 758.

That explanation did little to address the objectionable language. However, given the State's concurrence in the defendant's objection, the opinion was amended by inserting "or knowingly" in the objectionable part of the majority opinion so

9

that it then read "but if the act which causes the death is done purposely or knowingly deliberate homicide is committed."

While the reasoning on which this Court's decision in *Sigler was* based was sound, the objectionable language which was referred to in the petition for rehearing, and which the State acknowledged was incorrect, had no place in the opinion and did not logically follow from the preceding reasoning. Nevertheless, it is that language which has found its way into subsequent opinions and formed the basis for Instruction No. 14. *See State v. McKimmie* (1988) , 232 Mont. 227, 231, 756 P.2d 1135, 1138; *State v. Byers* (1993), 261 Mont. 17, 41, 861 P.2d 860, 875.

It is time to clear up this misperception of the state of mind which must be proven to establish deliberate or mitigated deliberate homicide before a significant injustice results. Our prior construction is clearly contrary to the plain language in the homicide statute and may, in the future, lead to serious and unjust perversion of its purpose.

For these reasons, we conclude that the District Court erred when it instructed the jury that the State merely needed to prove that Rothacher acted purposely, without regard to the result that he intended. To the extent that our prior decisions in *Sigler*, *McKimmie*, and *Byers* are inconsistent with this opinion, they are overruled. District courts should not give a similar instruction in the future.

10

However, our conclusion that the instruction was erroneous is simply the first part of our analysis. A district court judgment will not be reversed for error which is harmless. Section 46-20-104, MCA. The potential prejudice from Instruction No. 14 could occur where a defendant acted purposefully, but intended no harm. However, there were no facts presented in this case from which an argument could be made that when Rothacher struck his **victim** in the face and kicked him in the head while he was laying on the ground, he intended no harm. Therefore, Instruction No. 14 was, at worst, superfluous.

Our decision is consistent with decisions of the United States Supreme Court in which that Court has concluded that even instructions which violate the Federal Constitution may be harmless if, based on the entire record, the court concludes that the error was harmless beyond a reasonable doubt.

For example, in *Chapman v. California* (1967), *386 U.S. 18, 87 S.* Ct. 824, 17 L. Ed. 2d 705, the trial judge instructed the jury that it could draw inferences from the defendant's failure to testify. That instruction was consistent with a provision in California's state constitution at the time of trial. After trial, but before Chapman's appeal had been considered by the California Supreme Court, the U.S. Supreme Court decided Griffin *v. California* (1965), *380* U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106, *in* which it held that California's constitutional provision was invalid on the ground that it penalized a person's invocation of his Fifth Amendment

11

right to not incriminate himself. On appeal, the California Supreme Court held that the instructional error was harmless, The U.S. Supreme Court granted certiorari. On review, it concluded that while some errors are never harmless (such as coerced confessions, right to counsel, or an impartial judge), other constitutional errors, "in the setting of a particular case . . . [may] be deemed harmless," consistent with the Federal Constitution. *Chapman*, 386 U.S. at 22. However, that court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24. In that case, the court concluded that the instructional error was not harmless and reversed the California Supreme Court.

The court applied the *Chapman* test in *Rose v. Clark* (1986), 478 U.S. 570, 579-80, 106 S. Ct. 3101, 3106-07, 92 L. Ed. 2d 460, 471-72, to another situation of instructional error. In that case, the trial court gave an instruction to the jury which impermissibly shifted the burden to the defendant to prove that he acted without malice. In *Rose*, the defendant was charged with first and second degree murder of his former girlfriend and her new boyfriend in violation of Tennessee law. Malice was an element of second degree murder in Tennessee. The trial court instructed the jury that all homicides are presumed malicious, absent evidence to rebut the presumption, and that, if the state proved beyond a reasonable

12

doubt that a killing occurred, it is presumed to have been done maliciously.

The issue was whether the harmless error standard in *Chapman* applied to jury instructions which violate the principles set forth in *Sandstrom v. Montana* (1979), *442 U.S.* 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39. The Court held that it did, and stated that an "otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Rose,* 478 U.S. at 576. The Court recognized that "constitutional errors may be harmless 'in terms of their affect on the fact-finding process at trial."' *Rose,* 478 U.S. at 578 (citing *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 681). The Court concluded that "[w]here a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed." *Rose,* 478 U.S. at 579.

The Court noted in Rose that the defendant had the opportunity to introduce evidence, and was tried by a fairly selected, impartial jury which was supervised by an impartial judge. Other than the malice instruction, the jury was instructed that it had to find the defendant guilty of every element beyond a reasonable doubt and "[p]laced in context the erroneous malice instruction does not compare with the kind of errors that automatically require

13

reversal of an otherwise valid conviction." *Rose*, 478 U.S. at 579. The Court observed that when a jury is instructed to presume malice from predicate facts, the jury must still find that the predicate facts exist.

> In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not *intend* to cause injury. In that event the erroneous instruction is simply superfluous: the jury has found . . 'every fact necessary' to establish every element of the offense beyond a reasonable doubt.

*Rose*, 478 U.S. at 580-81 (citation omitted). The court held that the test was whether, based on the whole record, the error was harmless beyond a reasonable doubt, and remanded for that determination. *Rose*, 478 U.S. at 583-84.

More recently, the Court reiterated the harmless error analysisand set forth the following two-part test in *Yates v. Evatt* (1991), 500 U.S. 391, 404, 111 S. Ct. 1884, 1893, 114 L. Ed. 2d 432, 449: (1) the court must ask what evidence the jury actually considered in reaching its verdict, and (2) the court must weigh the probative force of that evidence against the probative force of the presumption.

This Court has followed *Chapman*. *State v. McKenzie* (1980), 186 Mont. 481, 608 P.2d 428. In *McKenzie*, we held that a case must be reviewed as a whole, rather than by examining one component in isolation. Looking only at an instructional error over-emphasizes the instructions in relation to the evidence. *McKenzie*, 608 P.2d at

14

458. Evidence was overwhelming and uncontradicted that McKenzie purposely and knowingly killed his victim; a reasonable juror could not have found otherwise based on the proof, notwithstanding improper instructions regarding rebuttable presumptions. We held that the unconstitutional jury instruction was harmless beyond a reasonable doubt, in the context of the undisputed evidence, and concluded that the assigned error could not have contributed to the verdict. *McKenzie,* *608* P.2d at 459.

In this case, the jury was correctly instructed by the court's Instruction No. 12 on the meaning of deliberate homicide, and in Instruction No. 17 regarding the lesser included offense of mitigated deliberate homicide. In the court's Instruction No. 30, the jury was fully informed of that part of § 45-2-201, MCA, which provides that the requirement of purposeful and knowing causation can occur without intending a specific result, so long as the same type of harm or injury was contemplated.

Because Instruction No. 14 did not apply to any facts which were offered as proof in this case (e.g., a negligent homicide situation that could become deliberate homicide as a result of the erroneous language), we conclude, after considering the record as a whole, that the error was harmless beyond a reasonable doubt.

## ISSUE 2

Was Rothacher's conviction of mitigated deliberate homicide supported by substantial evidence?

*15*

The standard of review for sufficiency of the evidence is "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' *State v. Arlington* (1994), 265 Mont. 127, 146, 875 P.2d 307, 318 (quoting *State v. Cyr* (1987), 229 Mont. 337, 339, 746 P.2d 120, 122).

Rothacher was charged with deliberate homicide, but was convicted of mitigated deliberate homicide. Section 45-5-103(1), MCA, provides that:

> A person commits the offense of mitigated deliberate homicide when he purposely or knowingly causes the death of another human being but does so under the influence of extreme mental or emotional stress for which there is a reasonable explanation or excuse.

(Emphasis added).

We have already discussed what must be shown to prove that a result is "knowingly caused." In this case, Rothacher, himself, admitted hitting and kicking Raper.

Dr. Mahnke testified that, in his opinion, the kick to the head was the blow that most likely killed Rapes. While the defendant now objects to that opinion on the basis that Dr. Mahnke was not properly qualified to express it, there was no objection to Dr. Mahnke's opinion at trial. We have held that "[a]n issue will not be reviewed if it is raised for the first time on appeal." *In re Marriage of Craib* (Mont. 1994), 880 P.2d 1379, 1387, 51 St. Rep. 937, 942 (citing *Erler v. Erler* (1993), 261 Mont. 65, 73, 862 P.2d 12, 18).

16

However, assuming *arguendo*, that the defendant had made a timely objection on this basis, the result would be the same. We have held that the determinations of qualifications and competency of expert witnesses are within the trial court's discretion and will not be disturbed absent an abuse of that discretion. *Cottrell v. Burlington Northern* (1993), 261 Mont. 296, 301, 863 P.2d 381, 384 (citing *Foreman v. Minnie* (1984), 211 Mont. 441, 445, 689 P.2d 1210, 1212). Dr. Mahnke testified that he earned his undergraduate degree from Harvard, his medical degree from the University of Washington, and interned at the University of Minnesota. Dr. Mahnke also testified that he was on the faculty at Yale and University of California-Irvine medical schools. He testified that he is board certified by the American Board of Neurological Surgery and is licensed to practice in Washington, Connecticut, California, Colorado, New Mexico, and Montana. We conclude that the District Court did not abuse its discretion when it allowed Dr. Mahnke to express his opinion in this case regarding the cause of his patient's death.

Dr. Gary Dale, the state Medical Examiner, stated that, in his opinion, Raper died as a result of head injuries.

We have held that witness credibility and the weight to be assigned to their testimony is to be determined by the trier of fact, and "disputed questions of fact and credibility will not be disturbed on appeal." *State v. Moreno* (1990), 241 Mont. 359, 361, 787

17

P.2d 334, 336 (citing *State v. Green* (1984), 212 Mont. 20, 23, 685 P.2d 370, 371-72).

In this case, numerous witnesses testified about Rothacher's conduct and its relationship to the injuries Raper received. The jury heard sufficient evidence to determine that Rothacher purposely or knowingly caused Raper's death, but that Rothacher was under extreme stress at the time. We conclude that there was sufficient evidence to support Rothacher's conviction for mitigated deliberate homicide.

The judgment of the District Court is affirmed.

_____
Jus 'ce

We concur:

_____
Chief Justice

_____

_____

_____
Justices

18

**Justice** Fred J. Weber specially concurs as follows:

I concur with the result in Issue I, and concur with all of Issue 2.

Under Issue I, the opinion quotes only Instruction No. 14. I believe it essential to consider the following additional instructions which were given:

INSTRUCTION NO. 28

A person acts <u>knowingly</u>:

1. when he is aware of his conduct or
2. when he is aware under the circumstances that his conduct constitutes a crime or
3. <u>when he is aware there exists the hish probability that his conduct will cause a specific result.</u>  [Emphasis supplied.]

INSTRUCTION NO. 29

A person acts <u>purposely</u> with respect to a result or to conduct described by a statute defining an offense <u>if it is the person's conscious object to engage in that conduct or to cause that r</u>esult.   [Emphasis supplied.1

Instructions No. 28 and 29 should be considered along with Instruction No. 14.  The pertinent portions of Instruction No. 14 are:

INSTRUCTION NO. 14

In order to convict the defendant of Deliberate Homicide, it is not necessary for the State to prove that the defendant intended to cause death of the **victim** Death may not be the intended result, <u>but, if the act which causes the death is done purposely</u>, . . . deliberate homicide is committed unless the result is too **remote** or accidental . .   [Emphasis supplied.]

The opinion then reached the following conclusions:

Therefore, while our statutory law does not require proof that Rothacher intended the specific result of his act,it does at least require that he intended a similar

19

kind of harm. It is not sufficient, as indicated in Instruction No. 14, that the act which caused the harm be done purposely without regard to whether <u>any</u> harm was intended. . .

The conclusion emphasizes it is not sufficient to prove the act was done purposely without regard to whether any harm was intended. I conclude that Instruction No. 29 satisfies that requirement because it states that a person acts purposely "if it is the person's conscious object to engage in that conduct or to cause that result." As a result, I do not agree with the foregoing conclusion of the opinion.

The same basic idea is again set forth in the key conclusion of the opinion as follows:

For these reasons, we conclude that the District Court erred when it instructed the jury that the State merely needed to prove that Rothacher acted purposely, without regard to the result that he intended. To the extent that our prior decisions in <u>Sigler, McKimmie</u>, and <u>Byers</u> e inconsistent with this opinion, they are overruled. District courts should not give a similar instruction in the future.

I disagree with the foregoing conclusion that the District Court erred when it instructed the jury that the State merely needed to prove that Rothacher acted purposely without regard to the result he intended. The matter of the result which Rothacher intended is covered by Instruction No. 29. Under that instruction Rothacher acted purposely if it was his conscious object to engage in that conduct (hitting and kicking the deceased) or to cause the death (of the deceased). When the instructions are read together, I do not conclude that there is a disregarding of the result which Rothacher intended

20

I would also emphasize that Instruction No. 28, which defines knowingly, emphasized that it would apply to Rothacher where he is aware there exists a high probability that his acts will cause a specific result--death in this case.

I would affirm the District Court on Issue 1 on the foregoing rationale by considering all instructions given as we are required to do.

_____
Justice

Chief Justice J.A. Turnage concurs in. the foregoing special concurrence.

_____
Chief Justice

21