NO.  95-535

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

 Plaintiff and Respondent,

 v.

WILLIAM R. PATTON,

 Defendant and Appellant.

FILED

DEC 17 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fifth Judicial District,
               In and for the County of Jefferson,
               The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Wendy Holton; Attorney at Law;
            Helena, Montana

            Joseph R. Massman; Massman Law Firm;
            Helena, Montana

        For Respondent:

            Hon. Joseph P. Mazurek, Attorney General,
            John Paulson, Assistant Attorney General,
            Helena, Montana

            Valerie D. Wilson, Jefferson County
            Attorney, Boulder, Montana


                        Submitted on Briefs:  November 14, 1996

                                 Decided:  December 17, 1996

Filed:


_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The defendant, William R. Patton, was charged by information, filed in the District Court for the Fifth Judicial District in Jefferson County, with the offense of deliberate homicide, in violation of § 45-5-102, MCA. Following a trial by jury, Patton was convicted of the crime with which he was charged. He appeals the judgment of the District Court. We affirm the District Court.

The issues on appeal are:

1. Did the State suppress exculpatory evidence and thereby deny Patton his right to a fair trial?

2. Did the District Court err when it instructed the jury?

FACTUAL BACKGROUND

William R. Patton was charged with the offense of deliberate homicide, in violation of § 45-5-102, MCA. The information alleged that on June 12, 1994, in Boulder, Montana, Patton caused the death of Aubrey "Sonny" Bradley when he stabbed him with a knife. Patton entered a plea of not guilty.

Prior to the trial, a private investigator by the name of Albert "Turtle" Johnson was appointed to assist Patton with the preparation of his defense. During his investigation, he determined that Bradley was romantically involved with Cheryl Dupuis. He also learned that, in the past, Dupuis' ex-husband, William Hagman, had assaulted both her and her boyfriend. On that basis, he concluded that Hagman should be a suspect in Bradley's homicide.

2

Johnson contacted Agent Ward McKay, an investigator with the Montana Department of Justice Criminal Investigation Bureau, and informed him of his suspicions and conclusions.

Agent McKay was familiar with the case and agreed to investigate the possibility that Hagman committed the homicide. He traveled to Butte and interviewed Hagman. Hagman admitted that he knew Bradley and that, on June 12, 1994, he went to Boulder to watch Dupuis. However, he stated that he did not visit the O-Z Motel, and he denied any involvement with Bradley's homicide. The forty-two minute interview was transcribed, and a copy was issued to Patton.

Agent McKay subsequently continued his investigation of Hagman, and interviewed Dupuis and other witnesses. None of the witnesses at the motel had seen Hagman at or near the time and place of the homicide. He also obtained Hagman's fingerprints, and sent them to the state crime lab. The lab reported that Hagman's fingerprints were not on any of the items recovered from the crime scene.

Ultimately, Agent McKay concluded that he had no evidence, witnesses, or information, other than Johnson's theory, to connect Hagman to Bradley's homicide. The State, therefore, dropped its investigation of Hagman, and continued to pursue a conviction of Patton.

Patton received a copy of Agent McKay's report and unsuccessfully attempted to interview Hagman. One week prior to trial, Patton obtained a court order for Hagman's deposition and

hired a private process server to serve him with the order. However, the attempt to serve Hagman was unsuccessful, and despite the assistance of the sheriff's office, he could not be located before the trial.

Trial by jury commenced on May 8, 1995. The State presented evidence and testimony to show that, on the morning of June 12, 1994, Bradley drove from Butte to Boulder. At some point, he stopped and picked up Patton, who was hitchhiking north on Interstate 15. Upon their arrival in Boulder, they consumed food and drinks at Phil and Tim's Restaurant, and then went across the street to their room at the O-Z Motel.

The next morning, Cheryl Dupuis went to the front desk of the O-Z Motel, and asked for Bradley. Debbie Kipp, who worked at the motel, escorted her to his room. They checked the room, and discovered Bradley's body on the floor between two beds.

The police determined that Bradley had been stabbed eight times with a knife. His pockets were turned inside out, and his empty wallet was found in the trash-can. On top of the mattress was an empty beer can which contained Patton's fingerprints, and underneath one of the beds was a bloody t-shirt. The police also found Patton's razor and hair samples in the bathroom.

Later that afternoon, a deputy sheriff spotted Patton near the highway three miles south of Boulder. When Patton saw the officer, he grabbed his black bag, and fled up a ravine. He was not apprehended at that time.

4

Three days later, on June 15, 1994, a highway patrol officer found Patton hitchhiking on the interstate south of Boulder. When the officer approached him, he turned around, dropped his black bag, and raised his hands over his head. When questioned, he told the officer that his name was "Beau Justice." Additionally, his pants were stained with Bradley's blood.

At the trial, Debbie Kipp and Dan Gosselin, the owner of the motel, testified that, on the night of June 12, 1994, Patton told them that he and Bradley had an argument, and that he had been locked out of their room. Gosselin further testified that Patton wore a buck-knife sheath on his belt.

Michael Mix worked at the front desk of the motel on June 12, 1994. He testified that Patton told him that he and Bradley had an argument about the television, but that their disagreement had been resolved. He also testified that Patton wore a buck-knife sheath on his belt, and that there was a large red stain on the front of Patton's shirt.

Patton testified on his own behalf. He claimed that on the night of June 12, 1994, he fell asleep in the motel room. When he awoke the next morning, he found Bradley dead on the floor. He pulled his pants out from under Bradley's body, dressed himself, packed his things, and left.

At the close of all the evidence, the District Court instructed the jury. Relevant to this appeal are the following jury instructions:

INSTRUCTION NO. 3

To convict the defendant of Deliberate Homicide . . the State must prove the following elements:

1. That the defendant caused the death of Aubrey Bradley . and

2. That the defendant acted purposely or knowingly.

If you find from your consideration of the evidence that all of these elements have been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find . that any of these elements has not been proved beyond a reasonable doubt then you should find the defendant not guilty.

INSTRUCTION NO. 4

A material element of every offense is a voluntary act, which includes an omission

INSTRUCTION NO. 6

A person acts purposely when it is his conscious object to engage in conduct of that nature or to cause such a result.

INSTRUCTION NO. 9

If you are satisfied that the crime charged in the information has been committed by someone, then you may take into consideration any testimony showing, or tending to show, concealment by the defendant. This testimony may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given such circumstance and significance if any, to be attached to it, are matters for the jury to determine.

INSTRUCTION NO. 10

If you are satisfied that the crime charged in the information has been committed by someone, then you may take into consideration any testimony showing, or tending to show, flight by the defendant. This testimony may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself

6

to prove guilt. The weight to be given such circumstance and significance if any, to be attached to it, are matters for the jury to determine.

The jury returned a guilty verdict, and the District Court ordered a presentence investigation. At the sentencing hearing, the District Court sentenced Patton to a term of seventy-five years at the state prison, and determined that he will not be eligible for parole until he has served twenty-five years of his sentence.

ISSUE 1

Did the State suppress exculpatory evidence and, thereby, deny Patton his right to a fair trial?

On appeal, Patton contends that the State suppressed exculpatory evidence by the manner in which it conducted its investigation of William Hagman. He maintains that it was readily apparent that Hagman was a viable suspect in the homicide, and that the defense needed Hagman for its investigation. Therefore, he asserts that the State suppressed exculpatory evidence when it failed to "preserve" Hagman as a witness, and that, as a result, he was denied his right to due process and a fair trial.

The State points out that Patton did not raise his due process claim in the District Court before, during, or after the trial. He did not ask the District Court for any relief, nor did he make any objection with regard to his inability to secure Hagman's presence for a deposition or testimony at trial.

We have consistently held that "[t]his Court will not consider issues raised for the first time on appeal when the appellant had the opportunity to make an objection at the trial level." *State v. Weeks*

(1995), *270* Mont. 63, 86, 891 P.2d 477, 491. The contemporaneous objection rule at § 46-20-104, MCA, and the limitations set forth at § 46-20-701, MCA, preclude appellate consideration of alleged errors unless a timely objection was made at trial, or unless certain statutory criteria are met. Patton does not assert that he made a timely objection, nor does he contend that this claim falls within one of the narrow statutory exceptions found at § 46-20-701, MCA.

Therefore, review of Patton's due process claim by this Court can only be conducted pursuant to the common law plain error doctrine. We recently held that before the plain error doctrine will be invoked a defendant must show that the failure to review an alleged error would either: (1) result in a manifest miscarriage of justice; (2) leave unsettled the question of the fundamental fairness of the trial or proceedings; or (3) compromise the integrity of the judicial process. *State v. Finley* (1996), *915* P.2d 208, *215*, *53* St. Rep. 310, 315.

We begin our analysis of Patton's due process claim with the following well-established principles of constitutional and criminal law:

> [I]t is well settled that while a criminal defendant has a constitutional right to obtain exculpatory evidence and that the denial of such right is a violation of due process, this right is only a personal right to obtain exculpatory evidence. It does not require that police officers take initiative or even assist in procuring evidence on behalf of a defendant. *State v.* Swanson (1986), *222* Mont. 357, 360-362, 722 P.2d 1155, 1157-1158; *In re Martin* (1962), 58 Cal. 2d 509, 24 Cal. Rptr. 833, 835, 374 P.2d 801, 803.

". . Police officers do not have an affirmative duty to search out favorable evidence for the defendant . . "

*[State, City of Bozeman v.] Heth* [(1988), **230** Mont. 268, 2721, 750 P.2d [103,] at 105. We reaffirmed this rule in *State v. Clark* (1988), **234** Mont. **222, 225, 762** P.2d 853, **855-856,** holding that there is no affirmative duty on police officers to obtain exculpatory evidence, but they must avoid interference with the efforts on the part of the accused to obtain such evidence.

*State v. Sadowski* (1991), *247* Mont. 63, 79, 805 P.2d 537, 547.

Furthermore, we have previously held that:

[O]nly a deliberate or intentional suppression of exculpatory evidence is a per se violation of due process. To amount to a violation of due process, negligently suppressed evidence **must** be **material** and of substantial use, vital to the defense, and exculpatory.

*Sadowski*, **247** Mont. at 79, 805 P.2d at 547 (citing *State, City of Bozeman v. Heth* (1988), 230 Mont. 268, 272, 750 P.2d 103, 105).

Patton's private investigator concluded that Hagman should be a suspect in the Bradley homicide. He contacted Agent McKay of the Montana Department of Justice **Criminal** Investigation Bureau and informed him of his suspicions. Although the State does not have **an affirmative** duty to obtain and gather exculpatory evidence for a defendant, Agent McKay agreed to investigate Hagman. His investigation involved the following actions: he conducted a forty-two minute interview of Hagman; the interview was transcribed, and a copy was issued to Patton; he interviewed Cheryl Dupuis and other witnesses; he submitted Hagman's fingerprints to

9

the crime lab; and he issued a copy of his report, which documented his conclusions, to Patton.

Based on his investigation, Agent McKay concluded that he had no physical or testimonial evidence to connect Hagman to the crime, and therefore, the State discontinued its investigation.

Unfortunately, Patton was unable to secure Hagman's presence at either a deposition or the trial. While the State is strictly prohibited from suppressing exculpatory evidence and from obstructing a defendant's efforts to put together his defense, it is not obligated to assist with his defense. However, Patton does not assert that the State took any affirmative steps to insure that Hagman would be unavailable for trial; nor does he claim that the State impeded his efforts to investigate and serve Hagman.

We conclude, therefore, that the State did not suppress exculpatory evidence, and that it did not violate Patton's due process rights to a fair trial. The State did not engage in any conduct that hindered Patton's defense. In fact, the State fulfilled its obligations when it responded to Patton's requests and conducted its investigation of Hagman.

Based on the principles of law established in *Sadowski*, and the application of the facts of this case to those principles, we hold that even if Patton had properly raised his due process claim in the District Court, it would not have affected the outcome of his trial. Therefore, his claim does not warrant review pursuant to the common law plain error doctrine, and accordingly, it must be denied.

10

ISSUE 2

Did the District Court err when it instructed the jury?

The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Brandon* (1994), 264 Mont. 231, 237, 870 P.2d 734, 737 (citing *State v. Lundblade* (1981), 191 Mont. 526, 529-30, 625 P.2d 545, 548). Additionally, we recognize that a district court has broad discretion when it instructs the jury. *State v. Ross* (1995), 269 Mont. 347, 358, 889 P.2d 161, 167.

On appeal, Patton contends that the District Court erred when it instructed the jury. Specifically, he makes the following three claims: (1) the District Court erred when it failed to include the element of voluntariness in its jury instruction which set forth the statutory elements of deliberate homicide (Instruction No. 3); (2) the District Court erred when it instructed the jury on the evidence of his post-crime concealment and flight (Instruction Nos. 9 and 10); and (3) the District Court erred when it defined the term "purposely" (Instruction No. 6).

THE ELEMENT OF VOLUNTARINESS

When the District Court defined the elements of deliberate homicide, it gave the following jury instructions:

INSTRUCTION NO. 3

To convict the defendant of Deliberate Homicide . . the State must prove the following elements:

11

1.     That the defendant caused the death of Aubrey Bradley      and

2.     That the defendant acted purposely or knowingly.

If you find from your consideration of the evidence that all of these elements have been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find . . that any of these elements has not been proved beyond a reasonable doubt then you should find the defendant not guilty.

INSTRUCTION NO. 4

A material element of every offense is a voluntary act, which includes an omission . .

Although the District Court instructed the jury that a material element of every offense is a voluntary act (Instruction No. 4), Patton contends that the District Court erred when it failed to include the element of voluntariness in its jury instruction which set forth the statutory elements of deliberate homicide (Instruction No. 3). He claims that the separate instructions could have misled the jury with regard to the extent of the State's burden of proof, and that the element of voluntariness should have been listed with the elements of the statutory offense in a single jury instruction.

In support of his contention, Patton cites several federal court decisions. However, this Court has previously addressed this issue, and we conclude that our prior cases are controlling.

In *State v. Zampich* (1983), 205 Mont. 231, 667 P.2d 955, the defendant submitted a proposed jury instruction which incorporated the term "voluntarily" alongside the mental state elements of

"purposely" and "knowingly."  The district court struck the **term "voluntarily"** from the proposed instruction, and instead, gave a separate instruction which stated that a "material element of every offense is a voluntary act."

On appeal, we concluded that the district court's other instructions adequately established the State's burden to prove each element of the **crime** beyond a reasonable doubt, and that the instructions, when read together, properly instructed the jury. On that basis, we held that the district court did not err when it failed to include the element of voluntariness in its jury instruction which set forth the statutory elements of the charged offense.

In *State v. Byers* (1993), 261 Mont. 17, 861 P.2d 860, the defendant asserted that the district court erred when it gave separate jury instructions on (1) the element of voluntariness, and (2) the statutory elements of the crime.  He claimed that the separate instructions confused the jury, and that they might not have fully considered the voluntary act requirement.

On appeal, we held that the separate instructions correctly reflected the law, and adequately established the State's burden of proof.  Furthermore, we concluded that the separate instruction on voluntariness did not prejudice the defendant.

In this case, the separate jury instruction on voluntariness did not prejudice Patton.  He did not claim to have acted involuntarily during the commission of the offense, and the element

13

of voluntariness was never an issue in the case.   Rather, his entire defense was that a third party committed the crime.

Therefore, based on our prior holdings, we conclude that the separate instructions (Instruction Nos. 3 and 4), when read together, fully and fairly instructed the jury on the law applicable to the case.   Accordingly, we hold that the District Court did not err when it failed to include the element of voluntariness in its jury instruction which set forth the statutory elements of deliberate homicide.

## PATTON'S CONCEALMENT AND FLIGHT

At trial, the State presented evidence and testimony which established that, on June 12, 1994, Patton left the scene of the crime.   Later in the afternoon, a deputy sheriff spotted Patton near the highway three miles south of Boulder.   When Patton saw the officer, he grabbed his black bag and fled up a ravine. Three days later, on June 15, 1994, a highway patrol officer apprehended Patton while he was hitchhiking on the interstate south of Boulder. When the officer questioned him, he concealed his true identity, and stated that his name was "Beau Justice."

Based on this evidence and testimony, the District Court gave the following jury instructions:

### INSTRUCTION NO. 9

If you are satisfied that the crime charged in the information has been committed by someone, then you may take into consideration any testimony showing, or tending to show, concealment by the defendant.   This testimony may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt.   The weight to be given such

**14**

circumstance and significance if any, to be attached to it, are matters for the jury to determine.

INSTRUCTION NO. 10

If you are satisfied that the crime charged in the information has been committed by someone, then you may take into consideration any testimony showing, or tending to show, flight by the defendant. This testimony may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given such circumstance and significance if any, to be attached to it, are matters for the jury to determine.

On appeal, Patton contends that the District Court erred when it instructed the jury on the evidence of his post-crime flight and concealment.

Patton does not claim that these instructions (Nos. 9 and 10) vary impermissibly from the Montana Criminal Jury Instructions from which they were derived; nor does he assert that the State's evidence of his flight and concealment is insufficient to support the use of these instructions. In fact, he concedes that the State is allowed to introduce evidence of his flight and concealment, and that the jury is allowed to consider that evidence.

However, he contends that when the District Court gave Instruction Nos. 9 and 10 it improperly commented on the evidence, invaded the province of the jury, and gave unfair weight to the evidence in favor of the State.

The language of Instruction Nos. 9 and 10 was taken verbatim from the Montana Criminal Jury Instructions (1990), published by the State Bar of Montana, and based upon the authority of *State v. Walker* (1966), 148 Mont. 216, 419 P.2d 300. Furthermore, we have

15

repeatedly upheld the use of jury instructions regarding a defendant's flight. *See, e.g., Byers*, 261 Mont. at 45, 861 P.2d at 877; *State v. Campbell* (1990), *241* Mont. 323, 330, 787 P.2d 329, 334; *State v. Charlo* (1987), 226 Mont. 213, 219, 735 P.2d 278, 281; *State v. Shurtliff* (1980), 187 Mont. 235, 244, 609 P.2d 303, 308; *State v.* Gone (1978), 179 Mont. 271, 277, 587 P.2d 1291, 1295.

Although most of the cases cited deal with a defendant's flight, it is well established that evidence of concealment is "treated in the same manner as flight." *See* MCJI 1-019 (citing *State v. Shaw* (1982), 199 Mont. 248, 648 P.2d 287; *State v. Armstrong* (1980), 189 Mont. 407, 616 P.2d 341; *State v. Adair* (Ariz. 1970), 469 P.2d 823).

Additionally, we recognize that "[a] jury instruction may be given when it is relevant to evidence or issues in a case, and when it is supported either by some evidence or some logical inference from other evidence presented at trial." *Charlo*, 226 Mont. at 218-19, 735 P.2d at 281 (citing *State v. Kirkaldie* (1978), 179 Mont. 283, 292, 587 P.2d 1298, 1304).

In this case, the District Court did not improperly comment on the evidence or invade the province of the jury. Instruction Nos. 9 and 10 were based on and supported by the State's evidence, and merely reflected the testimony of the State's witnesses.

Patton also asserts that when the District Court instructed the jury on the evidence of his flight and concealment it gave unfair weight to the evidence in favor of the State.

16

However, Instruction Nos. 9 and 10 accurately reflect the law in Montana, that the jury may consider flight by a defendant as a circumstance that tends to prove consciousness of guilt. *State v. Pierce* (1982), 199 Mont. 57, 63, 647 P.2d 847, 851.

Additionally, the instructions were conditioned by the phrase, "may take into consideration any testimony." (Emphasis added.) The instructions, therefore, were not mandatory, and did not impermissibly shift the burden of proof to the defendant. *State v. Goltz* (1982), 197 Mont. 361, 371, 642 P.2d 1079, 1085. Instruction Nos. 9 and 10 merely instructed the jury to determine the weight and significance, if any, of the evidence of Patton's flight and concealment; and they plainly instructed that evidence of his flight and concealment "is not sufficient of itself to prove guilt."

Lastly, we recognize that Instruction Nos. 9 and 10 are in accord with our holding in *Walker,* in which we stated:

> The evidence is sufficient to support the giving of the [flight and concealment] instruction[s], it was a matter for the jury to accept or reject [defendant's] reasons . . . . It was the jury's task then to weigh the evidence accordingly.

*Walker*, 148 Mont. at 226, 419 P.2d at 306.

Therefore, we conclude that when the District Court instructed the jury regarding Patton's post-crime flight and concealment, it did not give unfair weight to that evidence and did not err.

17

THE DEFINITION OF "PURPOSELY"

When the District Court defined the term "purposely," it gave the following jury instruction:

INSTRUCTION NO. 6

A person acts purposely when it is his conscious object to engage in conduct of that nature or to cause such a result.

On appeal, Patton contends that the District Court erred when it defined the term "purposely." He asserts that Instruction No. 6 impermissibly broadened the *mens rea* element of the crime charged, and thereby reduced the State's burden of proof as to that element. He maintains that he could only have acted "purposely," for purposes of a deliberate homicide conviction, if it was his conscious object to cause the death of Bradley, and that the jury was improperly instructed that he could be convicted if the State proved that he had the purpose to "engage in conduct," even though it did not prove that he engaged in that conduct for the purpose of causing another's death.

In *State v. Rothacher* (1995), 272 Mont. 303, 901 P.2d 82, the district court instructed the jury that in order to convict the defendant of deliberate homicide it was not necessary for the State to prove that the defendant intended to cause the death of the **victim**, so long as the act which caused the death was done purposely, and no circumstances of **mitigation, excuse, or** justification were present.

After an extensive analysis of the plain language of the pertinent statutes, we concluded that:

> [W]hile our statutory law does not require proof that [the defendant] intended the specific result of his act, it does at least require that he intended a similar kind of harm. It is not sufficient, as indicated in [the District Court's jury instruction], that the act which caused the harm be done purposely without regard to whether *any* harm was intended.

*Rothacher*, 272 Mont. at 307, 901 P.2d at 85.

In this case, we conclude that, pursuant to *Rothacher*, the District Court erred when it instructed the jury that "[a] person acts purposely when it is his conscious object <u>to engage in conduct of that nature or</u> to cause such a result." (Emphasis added.) Instruction No. 6 defined "purposely" in an either-or-fashion, and allowed the jury to convict Patton solely on the basis that he consciously engaged in conduct without regard to whether harm was intended.

However, our conclusion that Instruction No. 6 was erroneous is simply the first part of our analysis. Pursuant to § 46-20-701, MCA, a district court's judgment will not be reversed for error unless the defendant's substantial rights are affected.

The potential prejudice from Instruction No. 6 could occur where a defendant acted "purposely," but did not intend to cause any harm. However, in this case, *as* in *Rothacher*, no facts were presented from which a credible argument could be made that when Bradley was stabbed eight times his assailant did not intend to

*19*

cause any harm.  Patton's only asserted defense was that the crime was committed by another person.

Therefore, we hold that, although the District Court erred when it instructed the jury on the definition of "purposely" (Instruction No. 6), the error was harmless and does not require a reversal of the judgment.

Accordingly, the judgment of the District Court is affirmed.

_____
                    Justice

We concur:

_____

_____

_____

_____
Justices

20

Justice W. William Leaphart, specially concurring

I concur in the opinion of the Court. I write separately with regard to Instruction No. 10 regarding the jury's consideration of evidence of flight by the defendant. The defendant has argued that this instruction is an improper comment upon the evidence and should not be given. He cites a number of federal authorities in support of his argument.

I agree with the Court that Instruction No. 10 is a proper statement of the law under existing precedent. State v. Hurlbert (1988), 756 P.2d 1110, 232 Mont. 115. Furthermore, the circumstantial evidence in this case was so overwhelming that a different instruction on flight would not have made a difference in the outcome.

However, I do think that the Court should re-examine the propriety of giving an instruction on flight. I think there is considerable merit to the views expressed by the Committee drafting the Ninth Circuit Model Jury Instructions. That Committee expresses the view that instructions on particular kinds of evidence should be avoided as much as possible. "Aside from being unnecessary, instructions on particular inferences are undesirable in that they tend to inject argument into the judge's charge and lengthen it unnecessarily." Ninth Circuit Model Jury Instructions (West 1995), at 49. The Committee recommends against giving instructions such as those dealing with flight, resistance to

21

arrest, missing witness, failure to produce evidence etc.

As the Seventh Circuit stated in United States v. Jackson (1978), *572* F.2d 636, 639-40:

> [T]he probative value of flight as circumstantial evidence of guilt depends on the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. The court also noted that

>> [t]he use of evidence of flight has been criticized on the grounds that the second and fourth inferences are not supported by common experience and it is widely acknowledged that evidence of flight or related conduct is "only marginally probative as to the ultimate issue of guilt or innocence."

> Id. [citations omitted]. Indeed, the Supreme Court has expressed its lack of confidence in the probative value of flight evidence. In *Wong* Sun *v.* United *States, 371 U.S.* 471 483 n. 10, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963), the Court remarked that

>> we have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime. In Alberty *v. United States*, 162 U.S. 499, 511, 16 S.Ct. 864, 40 L.Ed. 1051 this Court said: " . . . it is not universally true that a man, who is conscious that he has done a wrong, 'will pursue a certain course not in harmony with the conduct of a man who is conscious of having done an act which is innocent, right and proper;' since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that 'the wicked flee when no man pursueth, but the righteous are bold as a lion."'

In light of this doubt as to the probative value of

flight evidence, we are of the opinion that although its use may be proper in many cases, its admission, especially followed by a jury instruction, should be regarded with caution.

Although the State can argue the issue of flight, for the reasons set forth above, I question whether it is appropriate to have the court comment upon flight evidence in its charge to the jury.

_____
Justice

23